O’NIELL, C. J.
 

 This is a suit for compensation under the Employers’ Liability Act, being the Act 20 of 1914, p. 44, as amended by the Act 216 of 1924, p. 446. The Act 85 of 1926, p. 112, which is the latest amendment of the statute, was not in effect when the accident happened.
 

 While the plaintiff was working for the defendant, handling iron pipes, the little finger of his right hand was mashed between the ends of two lengths of pipe, and the bones were fractured. The injury was treated by the defendant’s surgeon, at the defendant’s expense, and two surgical operations were performed, but failed to save any use of the finger. The result of the accident is that the finger is ankylosed, very much deformed, and is not only useless, but very much in the way. The plaintiff would perhaps be better off if the finger had been amputated. He preferred' that it should not be amputated, hoping that its usefulness and natural appearance in some measure might be saved. There is therefore no complaint of the surgical treatment which the injury received.
 

 The defendant paid the plaintiff compensation at the rate of 65 per centum of his wages for the period of 20 weeks, according to the third paragraph of subsection (d) of section S of the statute, which declares that, for the loss of a finger, other than the index finger, the compensation shall be 65 per centum of the wages during 20 weeks, and according to the last paragraph of the same subsection, which provides that the permanent total loss of the use of a member shall be equivalent to the amputation of such member.
 

 The plaintiff claims additional compensation because the stiffness and deformity of the finger interferes with, and impairs, the use of his hand. He sued for 65 per centum of his weekly wages for 150 weeks, being the compensation allowed by the statute for the permanent total loss of the use of a hand, and, in the alternative, he prayed that, if he was not entitled to compensation for the permanent total loss of the use of his hand, he should have judgment for 65 per centum of his weekly wages for 100 weeks, according to subsection (e) of section 8 of the statute, which provides:
 

 “In cases not falling within any of the provisions already made, where the employee is seriously permanently disfigured about the face or head, or where the usefulness of a member or any physical function is seriously permanently impaired, the court may allow such compensation as is reasonable in proportion to the compensation hereinabove specifically provided in cases of specific disability above named, not to exceed sixty-five per centum of wages during one hundred weeks.”
 

 The district court found that the plaintiff had not suffered any injury to his hand, except the inconvenience caused by the deformity and stiffness of the little finger, and therefore that he was not entitled to the compensation allowed by the statute for the permanent total loss of the use of the hand. The court found also that the plaintiff was not entitled to compensation under subsection (e), because that subsection is applicable only “in cases not falling within any of the provisions already made,” and the injury which the plaintiff had suffered, being- the permanent and total loss of the use of his little finger, did fall within one of the provisions already made in that section of the statute. The district court, therefore, rejected the plaintiff’s demand. He appealed from the decision; and the Court of Appeal found also that the plaintiff had not suffered any injury to his hand, except the inconvenience caused by the deformity and stiffness of the little finger, and therefore that he was not entitled to the com
 
 *335
 
 pensation allowed by the statute for the permanent total loss of the use of a hand. But the Court of Appeal reversed the judgment of the district court on the plaintiff’s alternative demand, and gave him judgment for 50 per centum of his weekly wages for the period of 70 weeks, as compensation — as the court said ■ — “for the impairment of the usefulness and physical function of his hand.” The case is before us on a writ of review.
 

 We cannot reconcile the decision of the Court of Appeal, in this case, with the decisions rendered by this court in the following cases, maintaining that the provisions of sub-_ section (e) of section 8 of the statute, allowing compensation for a serious and permanent disfigurement about the face or head, or for a serious and permanent impairment of the usefulness of any member or physical function, are not applicable to an injury for which compensation is specifically provided for elsewhere in the statute, viz.: Mack v. Legeai, 144 La. 1017, 81 So. 694; Garr v. Wyatt Lumber Co., 147 La. 689, 85 So. 640; Bell v. Merchants’ Cotton Oil Co., 160 La. 585, 107 So. 486; Black v. Louisiana Central Lumber Co., 161 La. 889, 109 So. 538; James v. Spence & Goldstein, 161 La. 1108, 109 So. 917; and Odom v. Atlantic Oil Producing Co., 162 La. 556, 110 So. 754.
 

 ; It is said in the opinion rendered by the Court of Appeal in this case that, in Kinney v. Edenborn, 151 La. 216, 91 So. 712, this court approved an allowance, under subsection (e), for an injury producing a deformity and stiff-, ness of a finger and the clipping off of the end of another finger, in addition to the allowance specifically provided for the loss of another finge!-; and it is said that, in Quave v. Lott-Batson Lumber Co., 151 La. 1052, 92 So. 678, we approved an allowance of 60 weeks’ eonipensation for the loss of the major part of the metacarpus, in addition to 30 weeks’ compensation for the permanent and total loss of the use of the index finger, and compensation for 60 weeks for the amputation of •the three other fingers. In Quave v. Lott-Batson Lumber Co., we allowed the compensation for the period of 150 weeks, as for the loss of the hand, because, as we said, all that was left of the boy’s hand was the index finger and thumb, and less than half of the metacarpus, and the index finger was left stiff and deformed and useless. It is true that we said — perhaps unnecessarily — that subsection (e) also warranted an allowance of compensation for the deformity and uselessness of the index finger, “which was not actually severed or amputated.” But we must bear in mind that the case of Quave v. Lott-Batson Lumber Co., as well as Kinney v. Edenborn, was governed by the Act 247 of 1920, p. 467, which did not contain the provision, which was adopted in the Act 43 of 1922, p. 76, that “the permanent total loss of the use of a member shall be equivalent to the amputation of the member.” We had already decided, in Norwood v. Lake Bisteneau Oil Co., 145 La. 823, 83 So. 25, that the compensation specifically allowed by the statute for the loss of a finger, or hand, or toe, or foot, etc., as the case might be, was applicable only to a case where the finger, hand, toe, or foot, as the case might be, was actually severed or amputated. When any such member of the body was injured, but not actually severed or amputated, before the statute was amended by the act of 1922, declaring that the permanent total loss of the use of a member should be equivalent to the amputation of such member, the compensation allowed for the injury was only for the loss of wage-earning capacity, and was fixed at a percentage of the difference between the wage-earning capacity of the employee before and after the accident, during the period of disability, not beyond 300 weeks or 400 weeks, as the case might be. Therefore, before the statute was thus amended by the act of 1922, if the loss of the use of a'member did not cause “disability to do work of any reasonable character,” and if the injured employee was therefore not entitled to a percentage of the
 
 *337
 
 difference between bis wage-earning capacity before and after tbe accident, during the period of disability, not exceeding 300 weeks or 400 weeks, as the case might be, the case was one “not falling within any of the-provisions already made,” and was subject to compensation under subsection (e) of section 8 of the statute. That was the theory and the basis of the ruling in Kinney v. Edenbom, that compensation might be allowed under subsection (e) for a deformity and stiffness of a finger, and for the clipping off of the end of another finger. The court observed that no specified amount of compensation was allowed for the loss of one phalanx, or less than one phalanx, of a finger. In so far, however, as the court allowed compensation for the loss of one phalanx, or less than a phalanx, of the' finger, under subsection (e) of the statute, the decision was virtually overruled in Bell v. Merchants’ Cotton Oil Co., 160 La. 585, 107 So. 436; and it was so stated in Black v. Louisiana Central Lumber Co., 161 La. 906, 109 So. 542. In Bell v. Merchants’ Cotton Oil Co., it was said that the provisions of subsection (e), being general in character, were not intended to allow compensation for an injury for which other and specific provisions of the statute, by necessary implication, denied compensation.
 

 In James v. Spence
 
 &
 
 Goldstein, supra, where the plaintiff had suffered only a partial loss of the use of his right hand, and where his weekly wages were so high that 65 per centum of the difference between his wage-earning capacity before and after the accident amounted to more than the maximum allowance of $20 a week, it was held that, although he was entitled to the $20 a week during the period of his disability, not beyond 300 weeks, the total amount of compensation allowed for the partial loss of the use of the hand could not exceed the amount allowed by the statute for the total and permanent loss of the use of a hand. It was held, therefore, that, under the peculiar facts of the case, the maximum weekly compensation allowed- during the period of disability was subject, not merely to the limitation of 300 weeks, but to the limitation of 150 weeks — so that the total amount of compensation for the partial loss of the use of the hand could not exceed- the amount allowed by the statute for the- tota-l and permanent loss of the use of a hand. The ruling, in that respect was not inconsistent with anything that was said or decided in Black v. Louisiana- Central Lumber Co;, supra, for in that case there was no- occasion for deciding — and we carefully refrained from saying — whether the compensation air •lowed for a partial loss of the use of a hand should be so limited that it could not, under the peculiar facts of any given case, exceed the amount allowed by the statute for -the total and permanent loss of the use of, a hand. We said:
 

 “There is no occasion for deciding in this case, and therefore we do not decide, whether the period of compensation should be so restricted that the total payments will not exceed 60 per cent, of the wages which the injured employee was earning at the time of the accident, for the period of 150 weeks. The writ-of review was issued at the instance of the defendant only. The plaintiff did not apply for a writ of review, or join in the application to review the judgment of the court of appeal. It is well settled that, in, reviewing a judgment of the court of appeal, at the instance of one of the parties to the suit, we «will not amend the judgment to his prejudice and to the advantage of the party who has not complained. In Ware v. Couvillion, 112 La. 43, 36 So. 220, it was said,” etc.
 

 Tbe judgment complained of, in that case, was for $18 a week for 81 weeks (plus 19 weeks for wbicb the compensation had been paid). We found that the plaintiff was entitled to only $15.60 a week (being 60 per cent, of the difference between his wage-earning capacity before and after the accident), during the period of his disability, not to exceed 300 weeks; but, inasmuch as he had not sought a review or complained of the judgment, we limited the payments, not merely to
 
 *339
 
 the period of disability, or to 300 weeks, but to the number of weeks which made the total amount not more than — but exactly — the amount of the judgment which the defendant was complaining of. In all other respects, the 'decision in James v. Spence & Goldstein was merely an affirmance of the decision in Black v. Louisiana Central Lumber Co., which was quoted extensively in James v. Spence & Gold-stein.
 

 It is suggested in the defendant’s brief in this case that, if we should find that he is not entitled to compensation under subsection (e) of section 8 of the statute, we should allow him compensation under subsection (c) “for injury producing partial disabili£y to do work of any reasonable character,” the compensation for which is
 
 65
 
 per cent, of the difference between the wages being earned at the time of the accident and the wages which the injured employee was able to earn after the accident. There was no allegation in the plaintiff’s petition, nor evidence offered on the trial, that the plaintiff was not able to earn as high wages 20 weeks after the accident as he was earning or able to earn at the time of the accident. It is suggested that we might remand the case to permit the introduction of evidence to show that, as a result of the accident, the plaintiff’s wage-earning capacity is less now than it was before the accident. But the suit was not brought on, any such allegation or theory. On the contrary, the record discloses that the plaintiff was working for the defendant only temporarily, while he was a student at Louisiana State University, gratifying a very praiseworthy ambition to obtain a master’s degree, and to teach in a college in Porto Rico- — all of which he had accomplished when this suit was tried. The plaintiff’s misfortune is a sad one, for which the compensation allowed by the statute gives poor consolation. But the statute speaks for itself — and speaks so. plainly that there is nothing left for interpretation. When the law says — as it does say in this case — that the compensation for the total and permanent loss of the use of a finger is 65 per centum of the weekly wages of the injured employee for 20 weeks, we have no right to allow more, by computing 65 per centum of the loss of wage-earning capacity during the period of disability, not beyond 300 weeks.
 

 The judgment of the Court of Appeal is annulled, and that of the district court is reinstated, and made the judgment of this court.