326 So.2d 584 (1976)
Herbert Ray JACK, Plaintiff-Appellee,
v.
FIDELITY & CASUALTY CO. OF NEW YORK, Defendant-Appellant.
No. 5265.
Court of Appeal of Louisiana, Third Circuit.
January 9, 1976.
Rehearing Denied March 4, 1976.
Writ Refused April 23, 1976.
*585 Allen, Gooch & Bourgeois, by Arthur I. Robison, Lafayette, for defendant-appellant.
Preston N. Aucoin, Ville Platte, for plaintiff-appellee.
Before CULPEPPER, DOMENGEAUX and PAVY, JJ.
PAVY, Judge.
On November 30, 1973, while working as a roughneck for Hercules Drilling Co., plaintiff sustained a comminuted fracture of the distal phalanx of his left great toe. In a previous suit filed April 18, 1974, and tried May 20, 1974, the trial judge awarded total and permanent disability benefits, but on appeal, an exception of prematurity was upheld and the claim dismissed as of nonsuit. (306 So.2d 806).
The instant suit was filed February 4, 1975, and tried April 3, 1975. The trial judge found plaintiff neither totally nor partially disabled but granted benefits for impairment or loss of a physical function, subject to credit for compensation previously paid. An award was also made for travel expenses plus penalties and $500 attorney fees.
Defendant, insurer of the employer, has appealed and plaintiff has answered the appeal seeking an award for general disability and for additional penalties and attorney fees.
Dr. Ramson Vidrine initially treated plaintiff on an out-patient basis. He confirmed the fracture and gave supportive treatment until March 11, 1974, when he discharged plaintiff as able to return to work. He had no further contact with the plaintiff.
Dr. Vidrine had referred plaintiff to Dr. Frazar Garr, an orthopaedist in Opelousas, on January 23, 1975. He saw plaintiff off and on until March 6 at which time he released him as able to return to work with the use of a steel-toe boot. The patient returned *586 to Dr. Garr on May 6 with an infection of the toe caused by the nail growing into the flesh. The toenail was removed surgically, and the patient followed by Dr. Garr for healing of the wound. He was discharged on September 9, 1974, as able to return to work with the protective boot. At the first trial, Dr. Garr testified that the wound from the toenail surgery would heal in about three months and, at that time, plaintiff would experience only minor discomfort, would not be disabled from performing his accustomed work and would have a 25 per cent permanent physical impairment or loss of the physical function of the left great toe. He indicated a possibility of arthritis in future years but did not think it would alter his ability to work or increase the amount of physical impairment. His reports subsequent to the first trial were used instead of live testimony. These confirmed the original prognosis and did not suggest any change in his evaluation of plaintiff's condition.
Plaintiff complained of pain, stiffness, inability to support weight on the foot, tiptoe or stand or walk for long periods of time. He stated that he experienced swelling, discoloration and a sticking sensation and claimed that the conditions were getting worse. He had started taking a mechanics course at a trade school. His wife generally corroborated his testimony regarding the various complaints.
Apparently, the trial judge was not sufficiently impressed with the testimony of plaintiff and his wife to conclude that it overcame Dr. Garr's positive opinion. We cannot say that he was in manifest error.
Plaintiff argues that Dr. Garr's expressions regarding arthritis are sufficient to prove disability. We have carefully examined the many questions and answers put to this doctor and can only conclude that his opinion was that in future years some arthritic changes would possibly occur but that such would not substantially alter his evaluation of plaintiff's condition. This was his testimony at the first trial. No attempt was made by plaintiff to show that any arthritis had set in at the later trial one year later. It is clear to us that this possibility is very much in the future.
The court stated that the award of $40 per week for 100 weeks was for a ". . . serious impairment of a physical function which is of a permanent nature". Apparently, the court must have based this on the provisions of R.S. 23:1221(4)(p). Defendant argues that provision cannot be applied because any award other than for disability must be under the provisions of R.S. 23:1221(4)(c & o). We agree. Paragraph (c) of Subsection 4 of said Section 1221 provides benefits for loss of the great toe and Paragraph (o) of the same provides for benefits for partial loss of use of such a member. Paragraph (p) of said Subsection 4 provides:
"In cases not falling within any of the provisions already made, where the employee is seriously permanently disfigured about the face or head, or where the usefulness of a physical function is seriously permanently impaired, the court may allow such compensation as is reasonable and as in proportion to the compensation hereinabove specifically provided in the cases of specific disability, not to exceed sixty-five per centum of wages during one hundred weeks."
It is well settled that no award can be made for disfigurement or impairment of a physical function as provided by the above quoted language where either the disability provisions or the specific injury schedule applies. See Malone, Louisiana Workmen's Compensation, Sections 283 and 284, pages 362 et seq. and the numerous authorities cited therein.
In Bergeron v. New Amsterdam Casualty Co., 243 La. 108, 141 So.2d 832 (1962), dealing with Paragraph p, the court stated:
"The plaintiffs contend that this section provides for compensation in three *587 instances: in cases not falling within any provisions already made, in cases of serious, permanent disfigurement, and in cases in which the usefulness of a physical function has been seriously, permanently impaired. In our opinion, this construction does violence to the statute. The section authorizes compensation only for disfigurement or the impairment of the usefulness of a physical function in cases which do not fall within any other benefit provision of the law. Since the section provides compensation for disfigurement or impairment unattended by disability, it transcends the historic base for workmen's compensation: the diminution of earning capacity. However, it is not a catch-all clause, as contended by plaintiffs." (Footnotes omitted)
Plaintiff sustained a partial loss of the use of the great toe. That is compensable under Paragraphs c and o of Subsection 4 of R.S. 23:1221. He was paid compensation through September 18, 1974, for a total of $2,665. The formula for computing benefits under the said pertinent provision is 25 per cent of 65 per cent of $226.56, the weekly wage. By that formula, plaintiff would be entitled to $736.60. This is less than the payments for disability so that no further amount is due, and the lower court's grant is incorrect.
We now consider the travel expense claim and imposition of penalties and attorney fees in connection with it. R.S. 22:658 provides that an insurer shall pay certain claims, including workmen's compensation claims, within 60 days after receipt of satisfactory proof of loss and that failure to pay within 60 days of such receipt and demand subjects any such insurer to a penalty of 12 per cent of the total amount of the loss with reasonable attorney fees for prosecution and collection of the loss.
There is no question that a claimant's traveling expenses in seeking medical attention form part of his medical expense claim and that it is subject to the statutory penalty provisions. See Walters v. General Accident & Fire Assurance Co., 119 So.2d 550 (1st Cir. La.App.1960); Murry v. Southern Pulpwood Insurance Co., 136 So.2d 165 (3d Cir. La.App.1962).
The court allowed plaintiff $238 travel expenses, of which $18 was for a 90-mile round trip between Ville Platte (plaintiff's home) and Lafayette (where he sought emergency medical attention) and of which $220 was for twenty-two 40-mile round trips between Ville Platte and Opelousas (Dr. Garr's office). It imposed the 12 per cent penalty and $500 attorney fees. Defendant-Appellant contends the amounts (25¢ per mile except 20¢ per mile on the Lafayette trip) are excessive and that penalties and attorney fees were not warranted because it timely tendered a reasonable amount of 10¢ per mile.
We think proof of the trips is sufficient to establish a prima facie claim for travel expenses on a mileage basis. If the insurer thinks they are not justified or if either party thinks the particular circumstances justify an adjustment from the mileage rate, proper proof could be offered as to such. In this case, no such special proof was offered. We note that state employees were allowed 12¢ per mile from 1972 to July 1, 1974, when it was increased to 16¢ per mile. Perhaps that adjustment was late in coming but we think such rates were and are generally realistic. Most of the expenses herein were incurred before that rate changed. For an overall adjustment in this case, we will allow 15¢ per mile or $145.50.
Defendant-Appellant made tender of 10¢ per mile. Even if this amount is assumed to be reasonable, the tenders were not timely. One tender (for seven of the *588 trips and apparently those incurred after the trial of the first suit) was made November 12, 1974, in response to a demand on September 3, 1974. This was beyond the 60 days. The other tender (for sixteen trips) was made February 12, 1975. Defendant contends this tender was timely because of a suspensive appeal from the judgment awarding travel expenses in the first suit and because it was made within 60 days of rendition of the appellate decision in that first suit. Regardless of prematurity in the first suit and suspension of the judgment, the evidence at the first trial constituted proof of loss and demand upon defendant for those travel expenses. Defendant did not make a tender although it continued to pay the weekly benefits. Litigation does not suspend the running of the 60-day time limitation nor otherwise render inapplicable the provisions of the penalty statute. Therefore, we think the second tender was also untimely and the statute is applicable.
We do not think the attorney fee award should be increased. Much of counsel's endeavors in this regard occurred before expiration of the 60 days or after tenders. It is true that, even without suit, these small travel expense claims can be time-consuming and troublesome and that collection of them is dependent upon substantial attorney fees being awarded. However, there are many peculiar circumstances in the history of this litigation. The trial judge was much more familiar with the efforts of plaintiff's attorney than we can ever be and we defer to his award.
Accordingly, the judgment of the lower court is amended so as to reduce the award to $145.50 plus 12 per cent penalty thereon and $500 attorney fees and, as amended, the judgment is affirmed.
Amended and affirmed.
CULPEPPER, J., concurs in part and dissents in part and assigns written reasons.
CULPEPPER, Judge (concurring in part and dissenting in part).
I concur in that portion of the majority decision which holds that the trial judge erred in awarding $40.00 per week for 100 weeks. I also agree with the majority that the judgment appealed must be amended so as to hold that under LSA-R.S. 23:1221(4)(c), (o) plaintiff is entitled to only 25% of 65% of his weekly wage for a period of 20 weeks, under which formula plaintiff would be entitled to only $736.60. Since the defendant has already paid more than this amount in benefits, the plaintiff's claim for any further disability benefits must be rejected.
However, I find myself in serious disagreement with that portion of the majority decision which finds the plaintiff is entitled to 15¢ per mile for travel expenses to the offices of the physicians. And, of course, I disagree with the majority's award of penalties and attorney's fees, which is based entirely on the contention that defendant was arbitrary in tendering only 10¢ per mile for travel expenses, when it should have tendered 15¢ per mile.
I agree with the majority that the plaintiff is entitled to the actual amount of reasonable travel expenses incurred in connection with medical treatment. But I am of the opinion that the plaintiff must introduce evidence to prove these actual travel expenses. The Court cannot simply take judicial notice, as the majority has done, that plaintiff is entitled to 15¢ per mile.
The record shows that at the beginning of the trial the parties stipulated that the plaintiff made a total of 23 trips to the offices of the physicians for medical treatment. But, there is no stipulation and not one shred of evidence introduced to show the actual cost of these trips. The defendant timely tendered to plaintiff 10¢ per mile. However, there is no evidence to show that plaintiff incurred this amount of expenses or any expense whatsoever on *589 these trips. We don't know whether he went in his own automobile, or by bus, or perhaps with a friend or relative who charged plaintiff nothing.
The trial judge arbitrarily awarded plaintiff 25¢ per mile, a total of $238.00, and found defendant was liable for penalties and attorney's fees for tendering only 10¢ per mile. The majority decision in this Court, without any evidence whatsoever, opines that 15¢ per mile is reasonable, and reduces the award for travel expenses to $145.50, but affirms the award of penalties and attorney's fees. This dramatically illustrates the difficulty for the parties, the attorneys and the courts if we depart from the established rule that the employee must prove his actual travel expenses.
The jurisprudence is established that plaintiff must introduce evidence to prove the amount of his actual reasonable travel expenses. Bananno v. Employers Mutual Liability Insurance of Wisconsin, 299 So.2d 923 (3rd Cir., La.App.1974); Pennywell v. Crawford, 262 So.2d 830 (2nd Cir., La.App.1972) and Murry v. Southern Pulpwood Insurance Co., 136 So.2d 165 (3rd Cir., La.App.1961).
In Murry v. Southern Pulpwood Insurance Company, supra, Judge Tate, now a justice on our Supreme Court, was the author of the opinion of this Court which states:
"However, although the claimant proved that he was treated at the physician's office on over twenty occasions, there is no proof that these visits occasioned him any expense by use of his own car (nor of the appropriate mileage cost) or otherwise. The trial court correctly disallowed any recovery for such unproved expense."
The majority decision in the present case is in direct conflict with the above established rule of our jurisprudence.
For the reasons assigned, I concur in part and dissent in part.