515 So.2d 486 (1987)
Ralph BOURGEOIS
v.
HOUMA GENERAL PAINTING AND WATERPROOFING COMPANY, et al.
No. 86 CA 1162.
Court of Appeal of Louisiana, First Circuit.
October 14, 1987.
*487 David M. Richard, Thibodaux, for plaintiff-appellant Ralph Bourgeois.
John L. Lanier, Pugh, Lanier & Pugh, Thibodaux, for defendants-appellees Houma General Painting and Waterproofing Co. & General Acc. Ins. Co.
Before GROVER L. COVINGTON, C.J., and SAVOIE and LEBLANC, JJ.
SAVOIE, Judge.
This is a suit for worker's compensation brought by Ralph Bourgeois (hereinafter Plaintiff) against his statutory employer, Houma General Painting & Waterproofing Company (hereinafter Employer), and its worker's compensation insurer, General Accident Insurance Company (hereinafter Insurer), as the result of an accident which happened on September 13, 1982. Plaintiff was injured when he fell thirty feet from a ladder. In his suit filed on May 4, 1983, Plaintiff alleged that he was totally and permanently disabled because of injuries to his face (loss of four teeth and multiple fractures of facial bones), left knee, left foot, left elbow, chest, and back. Plaintiff sought compensation benefits for total and permanent disability, medical expenses, penalties, and attorney's fees. In an amending petition filed on April 2, 1986, and at trial, Plaintiff made alternative claims for permanent partial disability, permanent disfigurement, and loss or partial loss of a function.
At trial on April 23 and 24, 1986, it was stipulated between the parties that Plaintiff was injured on September 13, 1982, due to an accident which occurred during the course and scope of his employment with Ted Barnes; that Ted Barnes was a subcontractor for Houma General Painting & Waterproofing Company; that Houma General Painting & Waterproofing Company was the statutory employer of Plaintiff; that at the time of the accident, Houma General Painting & Waterproofing Company's worker's compensation insurer was General Accident Fire and Life Insurance Corporation; that the insurer paid Plaintiff weekly worker's compensation benefits in the amount of $5,074.83 through July 3, 1984; that the insurer paid Plaintiff medical benefits totalling $14,117.40 through July 1, 1985; and that the weekly basis of the compensation was $160.01.
Employer and Insurer denied that Plaintiff was totally and permanently disabled on the basis that Plaintiff had been discharged by his attending physician as able to return to work. At trial, Employer and Insurer made an unconditional tender of $8,000.00 to Plaintiff; Plaintiff declined the tender, and the money was deposited into the registry of the court.
After the presentation of evidence, the court took the matter under advisement. For written reasons assigned July 2, 1986, judgment was rendered and signed on the same date. The trial judge rejected Plaintiff's *488 claim of permanent and total disability and rendered judgment in favor of Plaintiff and against Employer and Insurer for worker's compensation benefits of $61.00 per week for 125 weeks for the partial disability of Plaintiff's foot under LSA-R.S. 23:1221(4)(g) and (o), subject to a credit of $5,074.83. The trial judge also awarded Plaintiff penalties and attorney's fees. From this judgment Plaintiff has appealed raising two assignments of error, and the Employer and Insurer have answered his appeal.

ASSIGNMENT OF ERROR NO. 1
Plaintiff's first assignment of error is that the trial court failed to award Plaintiff benefits for loss of function or permanent disfigurement due to Plaintiff's loss of his four upper front teeth and his facial scarring. The trial judge found that Plaintiff was entitled to benefits for the 5% permanent partial loss of function of his foot[1] under LSA-R.S. 23:1221(4)(g) and (o), and for the loss of his four teeth and for his facial scars under LSA-R.S. 23:1221(4)(p). However, the trial judge only awarded Plaintiff benefits under LSA-R.S. 23:1221(4)(g) and (o) for the foot, reasoning that:
[T]he law does not permit recovery [for the lost teeth and facial scars] under subdivision (4)(p) if the injured worker has a claim [for loss of function of the foot] under subdivision (4)(a) through (o). R.S. 23:1221(4)(p); Lee v. Gaffney Construction Co., 474 So.2d 994, 998 (La. App. 5th Cir.1985), writ denied [477 So.2d 706 (La.1985) ]; Jack v. Fidelity & Casualty Co. of New York, 326 So.2d 584, 586-587 (La.App. 3rd Cir.1976), writ denied [330 So.2d 295 (La.1976) ]. As such, plaintiff is only eligible for `temporary total disability' benefits for the time he was unable to work and for benefits for the permanent partial loss of function of his foot.
The judge also found that Plaintiff was entitled to benefits for temporary total disability from the date of the accident (September 13, 1982) through May 11, 1983, on which date the trial court found that Plaintiff was discharged from Dr. Eroche, his treating physician.[2] The judge then correctly stated that the Plaintiff could not recover both for temporary total disability and for the loss of use of the foot, citing Hall v. Pipe Line Service Co., 233 La. 821, 98 So.2d 202, 205 (1957). Based on the jurisprudence, as Plaintiff was entitled to the more favorable of the two remedies, the judge found the award for the loss of function to be more favorable based on his calculations, and gave Plaintiff recovery for the loss of function of his foot.
Plaintiff contends that the trial court's interpretation of the Lee and Jack cases is an incorrect interpretation of LSA-R.S. 23:1221(4)(p). After a review of those cases and prior jurisprudence, we agree with Plaintiff's contention.
This accident occurred prior to the 1983 amendments to the worker's compensation statutes; the statute as it read at the time of plaintiff's accident controls. Hughes v. General Motors Guide Lamp Division, 469 So.2d 369, 376 (La.App. 2nd Cir.1985). The pertinent parts of LSA-R.S. 23:1221 are as follows:
Compensation shall be paid under this Chapter in accordance with the following schedule of payments:

* * * * * *
(4) In the following cases, the compensation shall be as follows:

* * * * * *
*489 (g) For the loss of a foot, sixty-six and two-thirds per centum of wages during one hundred and twenty-five weeks.
* * * * * *
(o) In all cases involving a permanent partial loss of the use or function of the members mentioned hereinabove, compensation shall bear such proportion to the amounts named herein for the total loss of such members as the disability to such members bears to the total loss of the member, provided that in no case shall compensation for an injury to a member exceed the compensation payable for the loss of such member.
(p) In cases not falling within any of the provisions already made, where the employee is seriously permanently disfigured about the face or head, or where the usefulness of a physical function is seriously permanently impaired, the court may allow such compensation as is reasonable and in proportion to the compensation hereinabove specifically provided in the cases of specific disability, not to exceed sixty-six and two-thirds per centum of wages during one hundred weeks.
The judge's interpretation was that a worker was not entitled to recover under LSA-R.S. 23:1221(4)(p) for a particular loss of function where he was already entitled to recover under any of the other schedule provisions, even for an independent loss of function. Yet, in both the Jack and Lee cases, the Plaintiff was seeking to recover benefits for the loss of one function under the specific disability provision as well as under the provision for disfigurement or impairment of the usefulness of a physical function. Jack concerned a worker's recovery under both LSA-R.S. 23:1221(4)(c) and (p) for injury to his toe, and Lee concerned the worker's recovery under both LSA-R.S. 23:1221(4)(i) and (p) for injury to his eye. An examination of the jurisprudence reveals that in earlier cases where recovery was denied under a specific disability provision and what is now provision (4)(p) it was denied because the worker was seeking to recover twice for the same injury. Rodriguez v. Standard Oil Co. of Louisiana, 166 La. 332, 117 So. 269 (1928). As the court stated in Rodriguez, the provision which is now LSA-R.S. 23:1221(4)(p) is "not applicable to an injury for which compensation is specifically provided for elsewhere in the statute...." (Emphasis ours). 117 So. at 270.
In the case before us, Plaintiff is not seeking to recover for the partial disability of his foot under LSA-R.S. 23:1221(4)(g) and (p). This "double dipping" is clearly barred. Rather, Plaintiff is seeking to recover for the disability of his foot under (g)one loss of functionand he also seeks to recover for the loss of his four teeth and his facial scars under (p) as a separate, entirely independent loss of function. Under the statute, Plaintiff is entitled to recover for both of these losses of functions. We reverse the trial court's finding that Plaintiff is not entitled to recover for the two independent losses of function.
In awarding benefits for loss of function under LSA-R.S. 23:1221(4)(p), the trial judge has much discretion in determining the weekly amount which is to be awarded for the impairment of the physical function. The judge has no discretion as to the length of time100 weeksfor which the amount must be paid. Edwards v. Hartford Insurance Company, 445 So.2d 499, 502, n. 4 (La.App. 2nd Cir.1984). In this case, the lower court did find that Plaintiff was entitled to recovery for the loss of teeth and scarring under LSA-R.S. 23:1221(4)(p). Yet, he did not set the amount of compensation to which Plaintiff would be entitled. Two earlier cases compensated workers for the loss of their teeth: Jenkins v. Orleans Parish School Board, 310 So.2d 831 (La.1975) and Hanks v. CRC Holston, Inc., 430 So.2d 1340 (La. App. 3rd Cir.), writ denied, 438 So.2d 576 (La.1983). In Jenkins, for the loss of two front teeth the court awarded Plaintiff $30.00 per week where the maximum would have been $49.00; in Hanks, for the loss of two front teeth the court awarded Plaintiff $183.00 per week which was the maximum.
*490 In this case, in addition to the loss of four teeth, Plaintiff suffered facial scarring. To recover for scarring, the scars must be materially disfiguring and permanent. Templet v. Travelers Insurance Co., 278 So.2d 805 (La.App. 1st Cir.1973). The Defendant introduced into evidence three photographs of the Plaintiff's face; there was no evidence showing Plaintiff's appearance prior to his accident. From these photographs, Plaintiff does not appear to be materially scarred; the only obvious disfigurement is that his nose does twist slightly. However, we again note that the trial judge, who viewed the Plaintiff at trial, did state in his written reasons that the Plaintiff was entitled to recovery for scarring, disfigurement and loss of teeth. We find that for the loss of his four front teeth, and for the scarring, the Plaintiff is entitled to 50% of his wages for 100 weeks under LSA-R.S. 23:1221(4)(p). Plaintiff's average weekly wage was $240.00[3]; Plaintiff is entitled to $12,000.00.
Because we have determined the amount which Plaintiff is entitled to for the physical impairment due to the loss of his teeth and the facial scarring, we must determine if the benefits which Plaintiff is entitled to receive under LSA-R.S. 23:1221(4)(g) and (o) and 23:1221(4)(p) are more favorable to Plaintiff than those under temporary total disability. See Jacks v. Banister Pipelines America, 418 So.2d 524 (La.1982). The trial judge calculated Plaintiff's benefits for his 5% permanent partial disability of his foot as follows: 5% (percentage of disability) × 66 2/3% (maximum amount for compensation) × $240.00 (Plaintiff's average weekly compensation) × 125 (weeks for which benefits must be paid). The weekly compensation under this calculation would be $8.00; the trial court then found that because $8.00 was below the minimum weekly compensation under LSA-R.S. 23:1202, Plaintiff would be entitled to the minimum. Slocum v. Lamartiniere, 369 So.2d 201 (La.App. 3rd Cir.), writ denied, 372 So.2d 569 (La.1979). The trial court calculated the minimum amount of compensation based on the statutory weekly wage under LSA-R.S. 23:1202. Because 20% of Plaintiff's average weekly wage ($48.00) was less than the minimum weekly compensation under LSA-R.S. 23:1202, ($61.00), the trial court was correct in using $61.00 as the basis for its calculations.[4] Under LSA-R.S. 23:1221(4)(g) and (o), Plaintiff is entitled to $61.00 for 125 weeks, which is $7,625.00 as found by the trial court. Thus, under LSA-R.S. 23:1221(4)(g), (o), and (p), Plaintiff is entitled to benefits of $19,625.00.
The trial judge's calculations as to the amount of benefits to which Plaintiff was entitled for temporary and total disability are based on facts not supported by the record. According to the trial judge, "Bourgeois is eligible for compensation benefits during the period of his temporary total disability, that is, from the date of the accident, September 13, 1982, until his discharge from Dr. Eroche, on May 11, 1983 (34 weeks)." As explained earlier (footnote 2), Plaintiff was not discharged by Dr. Eroche until July 6, 1984 although Plaintiff was working at the time he first visited Dr. Eroche, on May 11, 1983. Thus, the maximum length of time for which Plaintiff could possibly be entitled to benefits for temporary total disability would be for the period from September 13, 1982, through July 6, 1984, approximately 92 weeks. The amount to which Plaintiff would be entitled for temporary total disability for 92 weeks is $14,720.00; because this amount is still less than the award to Plaintiff under the schedule provisions of LSA-R.S. 23:1221(4), we award Plaintiff compensation for his specific losses as a minimum, with reservation of his right to recover under the partial *491 disability provision in the event it later proves to be more favorable. Jacks, 418 So.2d at 528-529.
Defendants have already paid Plaintiff $5,074.83 in benefits; we find that they are entitled to a credit for this amount. LSA-R.S. 23:1223; Jacks v. Banister, 418 So.2d at 529.

ASSIGNMENT OF ERROR NO. 2
Plaintiff's second assignment of error is that the trial court's award of attorney's fees of $2,500.00 is inadequate and should be increased to $5,000.00. Employer and Insurer have answered Plaintiff's appeal contesting the court's award of penalties and attorney's fees, as well as their being cast for the trial costs.
The trial court awarded Plaintiff penalties of 12% on all sums due and owing for the period from May 8, 1984 through April 23, 1986; as earlier stated, the trial court also awarded Plaintiff attorney's fees. The basis of the trial court's award was that under LSA-R.S. 23:1201, Insurer discontinued Plaintiff's benefits without probable cause. The trial court found that from the medical report of Dr. Eroche, Insurer had notice that Plaintiff could return to work and was thus justified in discontinuing benefits to Plaintiff for total disability. However, the trial court found that the medical report also gave Insurer notice of Bourgeois' compensable permanent partial disabilitythe 5% loss of function in the left foot; ability or inability to work is irrelevant to entitlement to benefits for loss of function. Chipman v. Insurance Co. of North America, 389 So.2d 432 (La.App. 2nd Cir.1980). Because Insurer had notice that Plaintiff was entitled to benefits for loss of function and yet discontinued benefits, this discontinuance was without probable cause.
Insurer and Employer on appeal contend that Plaintiff was only claiming benefits for total and permanent disability before filing his amending petition on April 2, 1986; Insurer further asserts that because medical evidence showed that Plaintiff was able to return to work, and thus, that Plaintiff was not totally and permanently disabled, it was justified in discontinuing further benefits. Because Plaintiff did not make any claims for loss of function until April 2, 1986, Employer and Insurer argue they should not be liable for penalties and attorney's fees.
Plaintiff contends that because Insurer had access to Plaintiff's medical records and paid Plaintiff's medical expenses, Insurer was aware of Plaintiff's injuries; because Insurer was aware of Plaintiff's injuries, it was responsible for ascertaining if benefits were payable.
We would first like to note that there is no medical report from Dr. Eroche in evidence; Dr. Eroche's deposition, taken on October 18, 1985, is in evidence, wherein Dr. Eroche testified that he first saw Plaintiff on May 11, 1983, that on May 8, 1984, he performed arthroscopic surgery on Plaintiff's left knee, and that on July 6, 1984, he discharged Plaintiff with a 5% permanent partial disability as to his left foot. No medical reports or records were attached to the deposition, although Dr. Eroche referred to his records when testifying. Thus, we have nothing in the record to show that Insurer was aware of Dr. Eroche's assessment of Plaintiff's 5% disability until October 18, 1985.
Other medical information that Insurer possessed was a letter sent by Dr. Cenac on April 2, 1985 to Insurer; Dr. Cenac's letter states that Plaintiff's complaints of back and neck pain could not be substantiated by objective symptoms, and that Plaintiff had fractured his left foot but that no residual had been assigned. On August 4, 1983, Dr. Landry sent Insurer's attorney a letter which stated the Plaintiff had severly fractured his facial bones as well as injured his left knee and foot. Dr. Landry wrote that he did not feel there would be any impairment to the foot, but that there might be permanent impairment to the knee.
The statute providing for penalties and attorney's fees from an insurer of an employer for the arbitrary and capricious refusal to pay worker's compensation is LSA-R.S. 22:658. Under the statute, the *492 insurer must pay benefits within 60 days after proof of loss and demand for payment. The employee has the burden to show his entitlement to penalties; because the statute is penal in nature, it is strictly construed. Thornell v. Payne and Keller, Inc., 442 So.2d 536 (La.App. 1st Cir.1983), writ denied, 445 So.2d 1231 (La.1984).
All medical reports which were introduced into evidence and which Insurer received prior to the deposition of Dr. Eroche showed no impairment of the function of the foot. Not until Dr. Eroche's deposition on October 18, 1985 was there conclusive medical evidence to show that Plaintiff had sustained a permanent partial loss of function to his foot. While Dr. Eroche's testimony in deposition might satisfy the requirement that Insurer be given proof of loss, there is no proof of demand for payment. Plaintiff's initial petition only makes a demand for permanent and total disability. Even Plaintiff's pretrial order filed on June 24, 1985, makes no demand for loss of a function. Not until Plaintiff's amending petition, filed on April 2, 1986, was demand made for benefits for loss of a function. This is not the 60 day demand required under LSA-R.S. 22:658, and for these reasons, we find that Plaintiff is not entitled to penalties and attorney's fees. This pretermits any need for consideration of Plaintiff's second assignment of error dealing with the inadequacy of the trial court's award of attorney's fees.
Employer and Insurer also appeal the trial court's assessment of the costs of trial against them. While Employer and Insurer made a formal tender of $8,000.00 at trial, we find Plaintiff entitled to an amount greater than $8,000.00, even crediting Employer and Insurer with worker's compensation benefits previously paid. Because the funds deposited did not constitute a tender of the full amount due Plaintiff the tender is ineffectual. Southern Plumbing & Supply Corp. v. Egert, 110 So.2d 762 (La.App. Orleans 1959). We thus affirm the trial court's assessment of costs against the Defendants.
For the above reasons, insofar as it denies Plaintiff recovery for benefits for impairment or loss of function due to his facial injuries, and insofar as it awards Plaintiff penalties and attorney's fees, the judgment appealed from is reversed. It is now ordered, adjudged and decreed that the judgment must be amended so as to condemn Employer and Insurer to pay Plaintiff worker's compensation benefits of $61.00 per week for 125 weeks and benefits of $120.00 per week for 100 weeks, together with legal interest on each week's compensation from due date until paid, subject to a credit of $5,074.83 for worker's compensation benefits previously paid. Defendants are to pay the costs of both courts.
REVERSED IN PART; AMENDED AND AFFIRMED IN PART.
NOTES
[1] The trial judge in written reasons refers to Plaintiff's injured foot as his right foot. The evidence clearly supports the fact that the injury was to the left foot, not the right.
[2] In his written reasons for judgment, the trial judge states that worker's compensation benefits were paid from the date of the accident through May 8, 1984; yet, the stipulation agreed to between the parties clearly was that benefits were paid through July 8, 1984, when Plaintiff was discharged by Dr. Eroche. The trial judge also states that Plaintiff was discharged by Dr. Eroche on May 11, 1983. The evidence shows that Plaintiff first saw Dr. Eroche for treatment of his knee and foot on May 11, 1983. Dr. Eroche performed arthroscopic surgery on Plaintiff on May 8, 1984. Plaintiff was discharged by Dr. Eroche on July 6, 1984.
[3] No evidence was introduced to show Plaintiff's average weekly wage. Yet in the stipulations, both parties agreed that the weekly basis of compensation was $160.01. From the record, we must conclude that these benefits were 66 2/3% of Plaintiff's wages under LSA-R.S. 23:1221(1); calculating from this, Plaintiff's weekly wage would be $240.00.
[4] The trial court obtained the average weekly wage as defined in LSA-R.S. 23:1202 by contacting the State Department of Labor, Office of Employment Security, which is permissible. See Henson v. Handee Corp., 421 So.2d 1134, 1139, f. 6 (La.App. 2nd Cir.1982).