| .MURRAY, J.
Dorignac’s Food Center appeals a judgment of the Office of Workers’ Compensation in favor of Rutherford H. Chatters, III, awarding permanent partial disability benefits, future medical expenses, and attorney’s fees. For the following reasons, we amend the award of permanent partial disability benefits, and affirm the judgment as amended.
FACTS:
Rutherford Chatters was injured on June 7, 1996, while working as a meat cutter at Dorignac’s Food Center. In his claim for benefits, he stated that he cut the index, long and ring fingers of his left hand when the meat he was cutting flew out of the cutting machine.
Mr. Chatters was treated in the emergency room of Doctor’s Hospital, and was referred to Dr. Edward Campbell, a hand surgeon, for further treatment. Dr. Campbell performed surgery to repair damage to the tendon sheath of the injured fingers and nerve damage. He also grafted skin to the long and ring fingers. Following surgery, Dr. Campbell recommended that Mr. Chatters be seen on a | ¿regular basis for wound care and to have his dressing changed. He also was to receive regular physical therapy to increase his range of motion and to strengthen the hand. The therapist’s notes indicate that Mr. Chatters was admonished for having missed numerous therapy sessions for various reasons, and that the importance of the strengthening exercises was stressed.
As of August 19, Dr. Campbell reported that Mr. Chatters’ hand was much improved, with an excellent range of motion, but that an intensive strengthening program was still needed. Mr. Chatters was released to return to work to light duty the first week of September, and to regular duty shortly thereafter, as his grip strength increased.. Dr. Campbell signed a Return to Work Authorization on August 30, stating that Mr. Chatters could try regular duty, but should work light duty if that proved too difficult. On October 30, 1996, Dr. Campbell noted that Mr. Chatters was having problems with the light duty. He complained of numbness and that his finger had become infected after he stuck it a couple of times while at work. Dr. Campbell’s examination revealed no evidence of any problem, and he recommended that Mr. Chatters have a functional capacity evaluation.
On November 4, 1996, Mr. Chatters saw Dr. James Butler, an orthopedic surgeon. Dr. Butler noted that the patient had soft tissue injuries to the index, long and ring fingers of his left hand, residual diminished sensation from nerve damage, and stiffness in the joints. Dr. Butler was unclear as to what therapy Mr. Chatters had received, but he, like Dr. Campbell, suggest *347 ed a functional capacity 1 ^evaluation. He opined that Mr. Chatters would have partially restricted use of his hand on a permanent basis, but did not recommend any further surgery. Dr. Butler’s May 30, 1997, report indicated sweating of the tips of the index, long and ring fingers, and diminished grip because of subjectively worsening pain. Based on the functional capacity evaluation conducted on February 3, 1997, which indicated that Mr. Chatters’ abilities surpassed the functional abilities required to perform his previous job as a meat cutter, Dr. Butler found no contraindications to Mr. Chatters returning to work at that job.
Following a reassessment on August 15, 1997, Dr. Butler reported that there was nothing further he could offer Mr. Chatters, but stated that he wanted to refer him to a hand specialist for a second opinion with regard to his future care. At the request of Dorignac’s attorney, Dr. Butler rendered a disability rating using American Medical Association guidelines, finding a 33% impairment to the left hand, equivalent to a 30% impairment to the left upper arm, equivalent to a 20% whole body physical impairment.
While still under Dr. Butler’s care, Mr. Chatters began treatment with Dr. Henry Evans, a family medicine doctor, on January 28, 1997. Mr. Chatters complained of pain and numbness of the injured fingers. It was Dr. Evans’ opinion that Mr. Chatters was unable to return to work at that time. He saw him again in February, March and April, and reported that Mr. Chatters’ subjective complaints remained the same. Dr. Evans diagnosed a left hand derangement. As had Dr. pButler, he recommended that Mr. Chatters consult a hand specialist. Dr. Evans’ records indicate that he last saw Mr. Chatters on May 3,1997.
At the request of his attorney,[1] and based on Dr. Butler’s recommendation, Mr. Chatters saw Dr. Harold Stokes, a hand surgeon, on December 3, 1997. At that time he complained of pain and numbness in his fingers, and cold intolerance, limited motion, and lack of strength in his left hand. After reviewing Mr. Chatters’ previous medical records and performing an examination, Dr. Stokes assessed Mr. Chatters with a 27.5% permanent impairment of the left hand. Although he opined that Mr. Chatters could return to work, due to his nerve injuries, Dr. Stokes had some concerns about him working in a cold environment. Dr. Stokes suggested a possible future arthrodesis of the distal joint of the long finger. This is a procedure in which the surfaces of the bone are fused so that the joint is made immovable.
Following a trial on the merits, the workers’ compensation judge rendered judgment in favor of Mr. Chatters awarding him permanent partial disability benefits pursuant to La.Rev.Stat. 23:1221(4)(e), (f) and (o), for a total of 109.50 weeks (49.50 weeks for his left hand and 60 weeks for his left arm), with interest, subject to credit for benefits already paid, and all outstanding and future medicals. The judge also awarded $500 in attorney’s fees to one of Mr. Chatters’ previous attorneys who filed an intervention. The judge did not find Dorignac’s to be arbitrary and capricious in its handling of the claim.
| .DISCUSSION:
In its first assignment of error, Dorig-nac’s argues that the judge erred in awarding permanent partial disability benefits to Mr. Chatters for both his left hand *348 and arm as the injury he sustained was limited to his hand. We agree.
Louisiana Revised Statute 23:1221 provides in pertinent part:
(4) Permanent partial disability. In the following cases, compensation shall be solely for anatomical loss of use or amputation and shall be as follows:
(b) For the loss of a first finger, commonly called the index finger, sixty-six and two-thirds percent of wages during thirty weeks.
(c) For the loss of any other finger, or a big toe, sixty-six and two-thirds percent of wages during twenty weeks.
[[Image here]]
(e) For the loss of a hand, sixty-six and two-thirds percent of wages during one hundred fifty weeks.
(f) For the loss of an arm, sixty-six and two-thirds percent of wages during two hundred weeks.
[[Image here]]
(m) Amputation between the elbow and the wrist shall be considered as equivalent to the loss of a hand and amputation between the knee and the ankle shall be equivalent to the loss of a foot.
[[Image here]]
(o) In all cases involving a permanent partial anatomical loss of use or amputation of the members mentioned herein-above, compensation shall bear such proportion to the number of weeks provided for herein for the total loss of such members as the percentage loss or impairment to such members bears to the total loss of the member; provided that in no case shall compensation for an injury to a member exceed the compensation payable for the loss of such member.
(p) In cases not falling within any of the provisions already made, where the employee is seriously and permanently disfigured or suffers a permanent hearing loss solely due to a single traumatic accident, or where the usefulness of the physical function of the respiratory system, gastrointestinal system, or genitourinary system, as contained within the thoracic or abdominal cavities, is seriously and permanently impaired, compensation not to [^exceed sixty-six and two-thirds percent of wages for a period not to exceed one hundred weeks may be awarded. In cases where compensation is so awarded, when the disability is susceptible to percentage determination, compensation shall be established in the proportions set forth in subparagraph (o) of this Paragraph. In cases where compensation is so awarded, when the disability is not susceptible to percentage determination, compensation as is reasonable shall be established in proportion to the compensation hereinabove specifically provided in the cases of specific disability.
It is obvious from a reading of the entire statute that its intent is for the worker with one injury to recover under only one of the Subparagraphs quoted above, with Subparagraph (p) being a catch-all provision designed to cover injuries that do not fit into one of the specifically enumerated categories. The limited jurisprudence concerning this provision supports our interpretation. For example, in Bourgeois v. Houma General Painting and Waterproofing Co., 515 So.2d 486 (La. App. 1st Cir.1987), the claimant had injuries to his face and his foot as a result of having fallen thirty feet from a ladder. In holding that it was permissible for the claimant to recover for both the loss of *349 function of his foot under subsection (4)(g) of the statute and for the loss of four teeth and facial scars under subsection (4)(p), the appellate court emphasized that the recovery was proper only because the claimant had two separate losses of function:
.. .Plaintiff is not seeking to recover for the partial disability of his foot under LSA — R.S. 23:1221 (4)(g) and (p). This “double dipping” is clearly barred. Rather, Plaintiff is seeking to recover for the disability of his foot under (g) - one loss of function — and he also seeks to recover for the loss of his four teeth and his facial scars under (p) as a separate, entirely independent loss of function.
Id., 515 So.2d at 490.
|7In the instant case, Mr. Chatters did not sustain two separate and distinct injuries, one to his arm and one to his hand. Rather, he sustained one injury to three fingers of his left hand. Although Dr. Butler assessed the disability as it related to both the hand and the arm, the statute provides that Mr. Chatters can only recover for the loss of use of his hand under La.Rev.Stat. 23:1221(4)(e) and (o).
Accordingly, we amend the lower court’s judgment to delete the award of disability benefits to Mr. Chatters for loss of use of his left arm, leaving intact the award of benefits for 49.5 weeks of permanent partial disability to his left hand.
In its second assignment of error, Dorig-nac’s argues that the judge erred in basing its judgment on the reports of Dr. Butler, Mr. Chatter’s treating orthopedic surgeon. It contends that the court should have used the disability assessment of Dr. Stokes, the treating hand specialist, because the testimony of a specialist should be given greater weight than that of a nonspecialist.
It is the function of the trial court to determine the weight to be accorded both lay and medical testimony. Factual findings in a workers’ compensation case are subject to the manifest error/clearly wrong standard of review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. Entered into evidence were the medical records of two doctors who evaluated Mr. Chatters and assessed disability ratings. We note that neither Dr. Stokes nor Dr. Butler actually treated Mr. Chatters, but rather saw him for assessment only. Dr. James Butler assessed Mr. Chatters as having a 33% ^disability of his left hand, while Dr. Harold Stokes assessed his disability as 27.5%. Although Dr. Stokes apparently limits his practice to surgery of the hand, he, like Dr. Butler, is an orthopedic surgeon.
Considering that both doctors are orthopedic surgeons, and that neither actually treated Mr. Chatters, we find no error in the judge’s decision to credit the disability assessment of Dr. Butler.
In its last assignment of error, Dorig-nac’s contends that the judge erred in awarding attorney’s fees to one of Mr. Chatters’ former attorneys who had filed an intervention, but did not participate in the trial.
The record reflects that Larry Broome filed a Petition of Intervention on October 1,1997. The judge signed the order allowing the intervention on October 2, with the stipulation that Mr. Broome also file an itemized bill for services. On October 17, the judge signed an order allowing Mr. Broome to withdraw as counsel. On December 21, counsel for Dorignac’s sent an offer of settlement to Mr. Chatters directly. Mr. Chatters responded on February 2,1999, with a counter-offer, and a request for a settlement conference between him *350 self, the judge, counsel for Dorignac’s and Mr. Broome. The record does not reflect if or when a settlement conference took place. On February 19, 1999, Mr. Broome filed an itemization of his legal services rendered totaling $4,100 on the basis of his having worked 41 hours at $100 per hour. On March 10 the judge signed an order awarding Mr. Broome attorney fees of $2,562.40, which was 20% of the amount 19that had been offered Mr. Chatters in settlement. However, the settlement was apparently never perfected, and the case proceeded to trial.
The trial transcript reflects that the administrative law judge dismissed the intervention, which was based on a settlement offer that had not been perfected, because Mr. Broome had not participated in the trial on the merits. The judgment, however, included an award of $500 in attorney fees to him.
We note that although he requested in his petition of intervention that he receive notice of all further proceedings in the case, Mr. Broome was not copied on the notice of trial for August 18,1999. He, therefore, cannot be penalized for failing to appear and participate. When a judge finds that attorney’s fees are appropriate, the fixing of those fees is within the discretion of the trial court, reviewable on appeal only for the abuse of that discretion. Sterling v. Orleans Parish School Board, 96-0107, p. 11 (La.App. 4 Cir. 6/26/96), 679 So.2d 167, 174. There is no question that Mr. Broome represented Mr. Chatters for a considerable portion of these proceedings before being terminated. As of February 19, 1999, he had spent forty-one hours. The award of $500 to him for his work on Mr. Chatters’ behalf was not an abuse of discretion.
Accordingly, we amend the judgment of the trial court to delete the amount of benefits awarded to Mr. Chatters for a disability of his left arm, and affirm the judgment insofar as it awarded permanent partial disability benefits for 49.50 weeks for the injury to Mr. Chatters’ left hand. The judgment is affirmed as amended.
AMENDED AND AFFIRMED AS AMENDED.

. The record indicates that Mr. Chatters had three different attorneys during the course of this litigation. At the time of trial, Mr. Chatters chose to represent himself.