984 So.2d 734 (2008)
Jamaal PIERRE
v.
TULANE UNIVERSITY.
No. 2007-CA-0600.
Court of Appeal of Louisiana, Fourth Circuit.
December 19, 2007.
Rehearing Denied July 10, 2008.
*735 Jamaal Pierre, Fort Worth, TX, In Proper Person, Plaintiff/Appellant.
Edward A. Rodrigue, Jr., Boggs, Loehn & Rodrigue, Metairie, LA, for Defendant/Appellee, The Administrators of the Tulane Educational Fund, d/b/a Tulane University.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge CHARLES R. JONES and Judge EDWIN A. LOMBARD).
JOAN BERNARD ARMSTRONG, Chief Judge.
The claimant-appellant, Jamaal Pierre, appeals pro se a Workers' Compensation judgment denying him any benefits against his employer, Tulane University, for alleged injuries arising out of an alleged work related injury.
This is a fact intensive case and the only legal principle to play a significant roll, therefore, is that of manifest error. Factual findings in a workers' compensation case are subject to the manifest error/clearly wrong standard of review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556; Chatters v. Dorignac's Food Center, 00-0477 (La.App. 4 Cir. 3/21/01), 787 So.2d 345, 349.
In her reasons for judgment, the workers' compensation judge below based her decision against the claimant on his lack of credibility:
Defendant has challenged, in many aspects, the veracity of this claimant. Defendant has shown many inconsistencies by claimant depending on [to] whom he is speaking and the results that claimant is seeking at that time.
Given these many lapses of veracity of claimant  whether by omission or commission  claimant has not carried his burden of proof that he had a workrelated accident within the course and scope of his employment on January 03, 3004 which resulted in any injury or disability.
This credibility call by the judge below is subject to manifest error review. Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). When findings are based on determinations regarding the credibility of witnesses, the manifest error/clearly wrong standard demands great deference to the trier of fact's findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Id. After reviewing the record as a whole, for the reasons hereinafter set forth, we find no manifest error in the credibility calls of the judge below and we find no manifest error in the *736 inferences and conclusions derived therefrom.
At the outset, let it be noted that the first statement of claimant's purported "findings of fact" set forth in his brief is that on October 13, 2003, he "had a nonwork related accident" in which a "four-wheeler" he was driving collided with a tree. He testified that he was sent to Charity Hospital in a coma for two days. The Charity Hospital records showed that he had opiates in his system. As a result of the accident he was diagnosed as having suffered a skull fracture, a fracture of the rim around his left eye, a fracture of his jaw, and multiple skull fractures in the back of his head. When he came out of his coma he went to the Tulane Hospital across the street where he was diagnosed with a carotid artery problem. He attributed the blurry vision in his left eye to this problem. He remained in Tulane Hospital for approximately two weeks.
Claimant alleges that an on the job injury occurred on January 30, 2004. He testified that he was on a fork lift when the accident occurred. He described the accident as follows:
I was sawing off this squirrel's nest that was built off in a tree when my neck locked up on me and got stiff. I dropped the pole. The pole hit the ground and they rushed me to the emergency room.
He subsequently clarified this statement by explaining that he was first taken to something like a walk-in clinic where he was given a prescription for Motrin which upset his stomach. The medical history taken at that time shows that he reported having muscle spasms in the past and that he had taken Flexeril for the problem, evidence of pre-existing injury. The next day when he went to an emergency room his "muscles tightened up on" him as a result of which he was given prescriptions for Flexeril and Bextra. He was sent home with bed rest. He testified that months later, after consultation with Dr. Chavez and Dr. Whitecloud, he "was allowed to go back to work on light duty."
He testified that at the time of the trial in spite of the fact that he was looking for work in the refrigeration industry, he was having trouble elevating his right arm. If the judge below was skeptical of the claimant's explanation of why he would be taking a practical, hands-on course in refrigeration which would require shoulder and arm use inconsistent with the disability he claimed, she would not have committed manifest error. Claimant testified that:
So I really feel like I still need to see the doctor where I can see  I think it's a muscle or a nerve problem I'm having in my neck or shoulder  my shoulders. And it shifts sometimes. It shifts throughout my body where it go[es] down into my groin area as well as my back.
He testified that he went to a hospital in Texas where he had been living since Hurricane Katrina because of depression and pain throughout his body. He admitted that the records of the Tarrant County District Emergency Department in Fort Worth, Texas, diagnosed him as having depression, non-specific headache, and pleurisy. He made no mention to those in attendance in Tarrant County of his alleged problem elevating his right arm.
He admitted that sometime between March and May of 2004 he went back to work for Tulane and continued to work there for some months thereafter. Subsequently, he admitted that he was back at work, albeit on a light duty basis, by March of 2004.
The medical records show that his carotid artery was completely blocked resulting in numbness in the left and right side *737 of his body. He admitted to having progressively worse numbness and dizziness. He also testified that he was told by a doctor that he had suffered a stroke as a result of which "one side of my whole body . . . went out on me, and I fell to the ground." There is no reason to believe that any of these symptoms arose out of the "squirrel's nest incident." Rather they are certainly attributable to the accident with the four-wheeler and other pre-existing injuries and symptoms.
Michael Case, Grounds Supervisor for Tulane testified on behalf of Tulane. He testified that the plaintiff returned to work on March 4, 2004 based on a Tulane Payroll Action Form which he identified. Based on another such form, Mr. Case testified that the plaintiff received a salary increase on June 25, 2004.
The plaintiff called no witnesses.
Among the inconsistencies and credibility problems alluded to by the workers' compensation judge in her reasons for judgment, are the failure of the claimant to report prior injuries and preexisting symptoms to physicians, including the fact that he had had two serious auto related accidents prior to his accident with the four wheeler. Significantly, when he went to see Dr. Melgar to complain of his symptoms, he failed to even mention the alleged work related incident with the squirrel's nest. And in spite of the fact that in his brief he complains that Dr. Melgar was not the physician of his own choosing, he makes no complaint about his treatment and admitted that his own physician "told me that Dr. Melgar is a good doctor."
From this Court's reading of the trial transcript it appears that not all of the pro se claimant's supposed grievances arise out of his lack of credibility  some appear more likely attributable to his understandable lack of medical and legal knowledge. For example, in his brief the main reasons given by claimant for his appeal relate to his choice of physician. The claimant in his brief complains that he was never permitted to see a physician of his choice. He states that Dr. Stefan G. Pribil was not his chosen doctor, but was chosen instead by his attorney. However, because Dr. Pribil was chosen by claimant's attorney he is considered by the law to be the claimant's chosen physician.
Similarly, while claimant acknowledged pn the stand that none of the many doctors he went to could see how sawing a branch in the manner described could result in the blockage of his carotid artery, he expressed the opinion that he did not think that the carotid artery caused any of his symptoms, an opinion he really was not qualified to give.
Also, claimant's brief opens with the assertion that he suffered a work related accident on January 30, 2004, but that assertion is followed immediately by the assertion that while he allegedly sustained injury as a result of a work related accident, he described that injury as "preexisting."
The foregoing are but a few examples of the inconsistencies in the claimant's evidence supporting the findings of the judge below. Of greater significance is the fact that the claimant offers nothing from the record, and this Court independently finds nothing, that would support a finding of manifest error  nothing to show that the judge below was clearly wrong or that her findings were not reasonable.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
JONES, J., concurs with reasons.
LOMBARD, J., concurs in the results.
*738 JONES, J., concurs with reasons.
I write separately to note that while the majority considers Appellant's appeal, I would have granted Appellee's Motion to Dismiss the Appeal.