SANDRA CABRINA JENKINS, Judge.
1 t This is an appeal from a judgment rendered by a workers’ compensation judge, overturning a decision by the Louisiana Workers’ Compensation Corporation (“LWCC”) to deny a claimant’s request for medical treatment. The appellants, LWCC and Beacon Hospital Management, Inc., raise three assignments of error— each relating to Louisiana’s newly estab *74 lished procedures for disputing an LWCC treatment decision. In her answer to the appeal, the claimant, Cassandra Aisola, requests modification of the judgment and additional attorney fees. For the reasons stated below, we modify the judgment and affirm as modified.
FACTUAL AND PROCEDURAL BACKGROUND
Ms. Aisola injured her back during the course and scope of her employment as a registered nurse on July 20, 2011 — seven days after the promulgation of the Medical Treatment Schedule (“MTS”) by the Office of Workers’ Compensation (“OWC”).[1] Soon after the accident,[2] she began treatment with orthopedist, Dr. fyRalph Gess-ner, who submitted monthly reports of his treatment and recommendations to the LWCC. Following her initial examination, Dr. Gessner reported to the LWCC that Ms. Aisola suffered from muscle spasm, bilateral leg pain, and bilateral sciatic notch tenderness, and that he had advised her not to work and to restrict her physical activity. Dr. Gessner also reported that he wanted to obtain an MRI of Ms. Aisola’s lower back.
The MRI performed on August 15, 2011, revealed a lumbar spine subligamentous herniation at L5-S1 as well as bulges at L-3 and L-4. Dr. Gessner subsequently informed the LWCC that he would treat Ms. Aisola on a conservative, non-surgical basis, and that he was sending her for physical therapy three times a week. He reported that he had not assigned a disability, but initially estimated that she would be able to return to work in three months.
On September 13, 2011, Dr. Gessner filed a request with the LWCC seeking authorization for Ms. Aisola to receive a lumbar epidural steroid injection, or “ESI.” A utilization review performed by LWCC contractor, Dr. Katharine Rath-bun,[3] determined that the requested ESI was not authorized under the LWCC’s newly promulgated MTS. A second request for an ESI by Dr. Gessner was also [sdenied. Neither Ms. Aisola nor Dr. Gessner sought review of these decisions by the OWC Medical Director as provided for under La. R.S. 23:1203.1(J)(1).[4]
*75 In October 2011, at the LWCC’s request, Ms. Aisola was seen by Dr. Robert Steiner for a second opinion. While Dr. Steiner did not expressly state that an ESI was unwarranted, he did opine that Ms. Aisola was not a surgical candidate and that she “was not anxious for an epidural injection.” Dr. Steiner also released Ms. Aisola to light work duty with restrictions.
In February 2012, the LWCC requested that OWC Medical Services appoint an Independent Medical Examiner (IME) to resolve what the LWCC characterized as a ■ “dispute regarding the injured employee’s medical condition and medical treatment needed” and specifically Ms. Aisola’s “work capabilities.” OWC appointed IME, Dr. Ralph Katz, who examined Ms. Aisola on April 11, 2012, opining in his report that he would give Ms. Aisola an ESI and have her perform a functional capacity evaluation (“FCE”) before making any determination regarding her work capabilities. In an April 27, 2012, addendum to this report — the LWCC |4had contacted Dr. Katz for Ms. Aisola’s current work status[5] — Dr. Katz stated that Ms. Aisola was capable of sedentary-to-light duty. Thereafter, the LWCC cut off indemnity benefits related to Ms. Aisola’s temporary total disability status on July 6, 2012.
On July 12, 2012, Ms. Aisola underwent a second MRI, which confirmed a subliga-mentous extrusion of disc material and an annulus fibrosus tear at L5-S1. Dr. Gess-ner again requested an ESI for Ms. Aisola on July 13, 2012. Ms. Aisola concurrently filed a motion to select her choice of neurosurgeon, Dr. Bradley Bartholomew. Both requests were initially denied under the MTS, but the LWCC later relented as to the request to select a neurosurgeon and entered into settlement authorizing one visit to Dr. Bartholomew.[6] In August and October of 2012, Dr. Gessner made two final requests for authorization to perform an ESI; both of these requests were also denied.[7]
Dr. Bartholomew examined Ms. Aisola on October 2, 2012. Comparing her two previous MRIs, Dr. Bartholomew agreed with the radiologists’ reports of a tear and subligamentous herniation at L5-S1. Based on his assessment, Dr. Bartholomew recommended that Ms. Aisola receive ESIs, facet blocks, and fluoroscopic guidance, and submitted a request for these procedures to the LWCC | ¡¡along with a supporting Clinical Note from Dr. Bartholomew’s October 2, 2012 examination.[8]
Bartholomew’s request was reviewed by Dr. Rathbun, who on October 19, 2012, denied the requested treatment as unauthorized under the MTS.. Dr. Rathbun’s denial referenced the October 12, 2012 *76 Clinical Note, stating that it showed no progressive deterioration to Ms. Aisola’s herniation. Identifying the denial of similar requests by Dr. Gessner, Dr. Rathbun explained:
[t]he request for ESIs and facet blocks are [sic] denied under the OWCA Guidelines for the following reasons:
1. The ESIs have been denied twice for specific reasons. The evidence from the new physician does not change any of the reasons for denial, • and in fact corroborate the findings of the treating physician and the IME that the patient has a normal examination.
2. There is no evidence of specific nerve dysfunction, radiculopathy or ra-diculitis to be treated with ESI. The patient has a normal exam and a normal EMG/NCS.
3. There is no evidence that that patient is currently engaged in active rehabilitation or that rehabilitation is planned for immediately after the proposed injections as required by the Guidelines.
4. Neither physician has provided written activity limitations to facilitate therapeutic return to work as required by the Guidelines at every visit.
5. The patient has not received appropriate conservative treatment as required by the Guidelines....
Additional visits .with this provider are denied at this time. The treatment being provided or requested has been denied previously, and is not necessary or appropriate under the OWCA Guidelines.-
Dr. Bartholomew timely appealed Dr. Rathbun’s denial to OWC Medical Director, Dr. Christopher Rich, pursuant to La. R.S. 23:1203.1(J)(1).[9] That appeal contained the Clinical Note supplied to Dr. Rathbun as well as the required copy of the 16denial letter. On November 6, 2013, Dr. Rich upheld Dr. Rathbun’s denial of the recommended ESIs, facet blocks, and fluoroscopic guidance. His denial stated that the documents submitted on appeal did not support the requested treatment under the MTS, elaborating
[o]nly one clinical record dated 10.02.2012 was submitted. No prior treatment records or imaging reports were submitted. The record notes a normal neurological exam, including strength, sensation, and reflex; no spasm, present was paravertebral tenderness and lack of extension.
Dr. Rich’s denial did not identify or discuss the portions of the October 2, 2012 Clinical Note and the underlying October 19, 2012 denial stating that Ms. Aisola had undergone two MRIs, which multiple doctors had determined to establish an annular tear at L5-S1. The last page of Dr. Rich’s denial advised Ms. Aisola and Dr. Bartholomew that they could seek judicial review of his decision by filing a Form 1008 — Disputed Claim for Compensation, and attaching thereto a copy of the underlying Form 1009 — Disputed Claim for Treatment (the appeal to Dr. Rich), and a copy of Dr. Rich’s denial.[10]
On November 15, 2012, Ms. Aisola timely filed the required materials with the Office of Workers’ Compensation Court. On January 30 and February 7, 2013, a full *77 trial was held to review the Medical Director’s decision. During those proceedings, the workers’ compensation judge (“WCJ”) also heard argument on Ms. Aiso-la’s choice of treating neurosurgeon and her disputed claim for compensation stemming from the LWCC’s July 2012 denial of indemnity benefits |7for which she sought reinstatement and back payment of benefits as well as fees and penalties. After a complete trial, the WCJ solicited post-trial briefing.
In its judgment, rendered April 18, 2013, the WCJ ordered the LWCC to reinstate Ms. Aisola’s temporary total disability benefits between July 6, 2012, and the date of judgment, and to continue paying these benefits “until such time as modification is appropriate.” It also ordered the LWCC to pay total disability benefits to Ms. Aiso-la for the period between July 21 and 27, 2011, during which time she was disabled by her injury and had yet to receive any compensation. In connection with the restoration of these benefits, the WCJ awarded $8,000.00 in penalties and $12,000.00 in attorney fees to Ms. Aisola for the LWCC’s arbitrary and capricious termination of her disability benefits pursuant to La. R.S. 23:1201(1), as well as interest on all back benefits, plus penalties and fees awarded.
With respect to Dr. Bartholomew’s request for ESIs, facet blocks, and fluoroscopic guidance, the WCJ reversed Dr. Rich’s denial and ordered the LWCC to authorize the requested treatments. In connection with this ruling, the WCJ further ordered Ms. Aisola to undergo an FCE and ordered the LWCC to reinstate vocational rehabilitation after Ms. Aisola completed the prescribed medical treatments and FCE. It also ruled that the LWCC was not responsible for payment of any future medical expenses incurred in connection with visits to Dr. Gessner, similarly denying Dr. Gessner’s referral to a pain management specialist and psychologist as premature. Finally, Ms. Aisola was awarded the cost of her OWC filing fees.
| «Appellants timely filed the instant appeal from that part of the judgment reversing the decision of OWC Medical Director Dr. Rich. Ms. Aisola timely answered the appeal, seeking modification of the judgment below as well as costs on appeal.
DISCUSSION
This Court has jurisdiction to hear direct appeals from administrative agency determinations in workers’ compensation matters under La. Const. art. V § 10(A). See also La. R.S. 23:1310.5(A)(2). In so doing, this Court is “mindful of the jurisprudential tenet that workers’ compensation is to be liberally construed in favor of coverage.” Poissenot v. St. Bernard Parish Sheriff’s Office, 09-2793, p. 6 (La.1/9/11), 56 So.3d 170, 174 (citing Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1007 (La.1989)). Consistent with this principle, we review factual findings under the manifest error/clearly wrong standard of review. Pierre v. Tulane Univ., 07-0600, p. 1 (La.App. 4 Cir. 12/19/07), 984 So.2d 734, 735, writ not considered, 08-1716 (La.10/31/08), 994 So.2d 526 (citing Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556; Chatters v. Dorignac’s Food Center, 00-0477 (La.App. 4 Cir. 3/21/01), 787 So.2d 345, 349.) However, “[w]hen legal error interdicts the fact-finding process in a workers [sic] compensation proceeding,” our review of those findings is conducted de novo. Tulane Univ. Hosp. & Clinic v. Lockheed Martin Corp., 11-0179, p. 3 (La.App. 4 Cir. 6/29/11), 70 So.3d 988, 990 (citing MacFarlane v. Schneider Nat’l Bulk Carriers, Inc., 07-1386, p. 3 (La.App. 4 Cir. 4/30/08), 984 *78 So.2d 185, 188). We | likewise review the WCJ’s legal conclusions de novo. Id. (citing MacFarlane, 07-1386, p. 3, 984 So.2d at 188).
An employer’s obligation to furnish medical treatment to an injured employee is governed by La. R.S. 23:1201, et seq. The instant appeal comes to us through the appellate process outlined by La. R.S. 23:1203.1(J) & (K). In addition to setting forth the process for appeals, La. R.S. 23:1203.1(K) establishes that the decision of the OWC Medical Director “may be overturned when it is shown, by clear and convincing evidence, the decision ... was not in accordance with the provisions of this Section.” The provisions in question state that all authorized medical treatment decisions must be in accordance with the MTS promulgated by the OWC. See La. R.S. 23:1203.1(1). Under this new treatment regime all “medical care, services, and treatment due” shall mean “care, services, and treatment in accordance with the [MTS],” or any variance from the MTS that the OWC Medical Director deems to be “reasonably required to cure or relieve the injured worker from the effects of the injury or occupational disease given the circumstances.” Id.
|inI. Appellants’ Assignments of Error
Appellants raise three inter-related assignments of error, each related to the WCJ’s reversal of the medical director’s decision. Taking issue with the WCJ’s handling of the proceedings, Appellants first contend that the WCJ erroneously went beyond the appropriate scope of its review by considering the opinion of the IME assigned to Ms. Aisola when evaluating Medical Director Rich’s treatment decision. Appellants next contend that the WCJ erred as matter of law in treating the IME report as prima facie evidence of the facts contained therein, pursuant to La. R.S. 23:1123. Finally, Appellants contend that the WCJ erred in finding that clear and convincing evidence established that the medical director’s decision was erroneous. We consider each assignment in turn, finding no prejudicial error in the WCJ’s review.
A. Assignment of Error One: Consideration of evidence beyond the WCJ’s scope of review
Appellants argue that the WCJ’s review on appeal from a medical director’s treatment determination should be limited to whether the director’s decision correctly applied the MTS. They specifically argue that the WCJ went beyond those limits when she considered the opinions of the IME as stated in the written reasons for judgment. We find that Appellants have waived this issue.
Appellants did not lodge any objection to the introduction of the IME report. It is well established that when a party fails to contemporaneously object to the introduction of objectionable evidence, that party waives the right to complain of the issue on appeal. See St. Martinville, L.L.C. v. Louisiana Tax Comm’n, 05-0457, p. 5 (La.App. 1 Cir. 6/10/05), 917 So.2d 38, 42 (citing Trans-Global Alloy Ltd. v. First Nat. Bank of Jefferson Parish, 583 So.2d 443, 448 (La.1991)). Moreover, Appellants are the party that offered the IME report into evidence and elicited testimony about the contents of the report from their own expert in the course of defending the medical director’s denial of the ESI, facet blocks, and fluoroscopic guidance. This is invited error and cannot be challenged by Appellants on appeal. Id., 05-0457, pp. 5-6 (La.App. 1 Cir. 6/10/05), 917 So.2d 38, 42 (“It is a Veil-established commonsense principle’ that ‘[gjenerally, a party introducing evidence *79 cannot complain on appeal that the evidence was erroneously admitted’ ”) (quoting Ohler v. United States, 529 U.S. 753, 755, 120 S.Ct. 1851, 1853, 146 L.Ed.2d 826 (2000)). As such, we do not reach the question whether an IME report, which was not formally submitted to Dr. Rich, may be considered on a Form 1008 appeal to the WCJ.
B. Assignment of Error Two: The WCJ’s reliance on La. R.S. 23:1123
Appellants néxt contend that the WCJ committed legal error when she held that the IME’s report constituted prima facie evidence of its contents in proceedings pursuant to La. R.S. 23:1123.
The portion of Dr. Katz’s April 11, 2012 IME report relied on by the WCJ contains the following statements regarding Ms. Ai-sola’s condition:
She has only subjective complaints of pain today with nothing objective on examination. However, because of persistent ongoing symptoms in the lower back, albeit subjective, and the fact she has some mild degenerative changes at L5-S1, I would offer her an [ESI] xl to see if it gives her any substantial improvement. If it does, thenjjgshe can go forward with the other two. However, if she does not have any improvement from the single epidural, I would put her at MMI.[11]
If she gets improvement from the epidurals, I would give her a total of 8 weeks to recuperate from the injections and then at that point put her at MMI. She should have an FCE to determine appropriate level of work.
Disputes regarding an employee’s ability to return to work are governed by La. R.S. 23:1123, which requires the appointment of an IME and which states:
If any dispute arises as to the condition of the employee, or the employee’s capacity to work, the director, upon application of any party, shall order an examination of the employee to be made by a medical practitioner selected and appointed by the director. The medical examiner shall report his conclusions from the examination to the director and to the parties and such report shall be prima facie evidence of the facts therein stated in any subsequent proceedings under this Chapter. (Emphasis added)
In contrast, La. R.S. 23:1203.1(1) states:
After the promulgation of the medical treatment schedule, throughout this Chapter, and notwithstanding any provision of law to the contrary, medical care, services, and treatment due, pursuant to R.S. 23:1203, et seq., by the employer to the employee shall mean care, services, and treatment in accordance with the medical treatment schedule. Medical care, services, and treatment that varies from the promulgated medical treatment schedule shall also be due by the employer when it is demonstrated to the medical director of the office by a preponderance of the scientific medical evidence, that a variance from the medical treatment schedule is reasonably required to cure or relieve the injured worker from the effects of the injury or occupational disease given the circumstances.
Generally, there would be no legal error where a WCJ applies La. R.S. 23:1123 to conclude that the objective facts stated in ,an IME report are prima facie evidence of those things the IME observed. Here, however, the WCJ went beyond the objective facts. Specifically, the WCJ relied on the IME’s opinion that an ESI and FCE *80 should be authorized to conclude that “the ESI and FCE were per se [-^reasonable and necessary treatment, and therefore due and owing under” the MTS.[12] We find that conclusion erroneous. It is clear that whatever treatment is reasonably due and owing following promulgation of the MTS must be a treatment authorized by the MTS on the facts of a given case. See La. R.S. 1203.1(1).
Nevertheless, while the WCJ’s reliance on the IME’s report constituted legal error, it does not merit reversal. See Wooley v. Lucksinger, 09-0571, p. 77 (La.4/1/11), 61 So.3d 507, 572 (“Judgments are often upheld on appeal for reasons different than those assigned by the district judges”). As we explain in the next section, the WCJ’s error notwithstanding, the judgment below is correct for reasons different than those stated in the reasons for judgment.[13]
C. Assignment of Error Three: the WCJ’s application of the clear and convincing evidence standard
Appellants lastly contend that the WCJ erred in her application of the clear and convincing evidence standard under which it must review the medical director’s treatment decisions. Appellants’ contention lacks merit.
The decision of medical director “may be overturned when it is shown, by clear and convincing evidence, the decision of the medical director or associate 114inedical director was not in accordance with the provisions of this Section.” La. R.S. 23:1203.1(K).
Preliminarily, the parties disagree as to the appropriate standard by which this Court should review the WCJ’s decision. Appellants urge that we review the WCJ’s finding de novo whereas Ms. Aisola suggests this Court review the WCJ’s decision for manifest error. While this Court has yet to address which standard of review is applicable to the WCJ’s ruling, the Third Circuit has recently examined the issue. See Vital v. Landmark of Lake Charles, 13-842, p. 1 (La.App. 3 Cir. 2/12/14),- So.3d -, 2014 WL 550912 (“The WCJ’s analysis is necessarily fact-intensive; therefore we conclude that, as with most findings of fact, the WCJ’s decision is subject to review under the manifest error/clearly wrong standard.” (citing Poissenot, 09-2793, p. 6, 56 So.3d at 174)); See also, Moran v. Cajun Well Serv., Inc., 13-821, p. 2 (La.App. 3 Cir. 2/12/14), — So.3d —, 2014 WL 551250 (holding a WCJ’s ruling that the OWC Medical Director erred in denying treatment was reviewed de novo because it involved no finding of fact).
In the instant case, the proceedings before the workers’ compensation judge consisted of a full trial on the merits. The WCJ received into evidence several hun *81 dred pages of exhibits, listened to two days of testimony, and reviewed the parties’ . post-trial briefing, which presenting the evidence in combination with the applicable law. Despite the fact that La. R.S. 23:1203.1(K) denominates these proceedings as an “appeal,” it is clear from a review of the record that both parties understood the WCJ to be serving as fact-finder. These observations compel the conclusion that the WCJ’s reversal of Dr. Rich’s decision should be treated as a factual finding subject to manifest error review. Therefore, we must affirm that h ¿ruling provided that the record reflects a reasonable basis for it. See Vital, 13-842, p. 1, — So.3d — (citing Poissenot, 09-2793, p. 6, 56 So.3d at 174).
Dr. Rich’s denial of the requested ESI, facet blocks, and fluoroscopic guidance was predicated upon the fact that the records submitted to him contained only one clinical note and no medical records or imaging. In addition, Dr. Rich appears to have based his denial on a lack of information as well as evidence in the clinical note indicating “a normal neurological exam, including strength, sensation, and reflex; no spasm, present was paravertebral tenderness and lack of extension.” Importantly, Dr. Rich’s denial does not mention the L5-S1 herniation identified by Dr. Bartholomew’s October 12, 2012 Clinical Note nor the underlying denial by Dr. Rathbun, both of which were submitted to Dr. Rich. Dr. Rich’s denial also understates what Dr. Bartholomew’s clinical note identifies as a “large amount of bilateral paravertebral tenderness” in and around the location of the herniation and that Ms. Aisola had “almost no extension because of her complaints of pain.”
Moreover, the lack of information submitted to Dr. Rich did not seem like a reasonable basis for denying Dr. Bartholomew’s request based on the evidence introduced at trial. Dr. Rathbun, who was the lone medical expert at trial, testified that she could access medical records and treatment requests within Ms. Aisola’s OWC file for purposes of conducting a utilization review even when that information had not been provided to her along with the given request she was reviewing. In fact, Dr. Rathbun’s denial of Dr. Bartholomew’s request demonstrates that Dr. Rathbun was able to access and consider records associated with prior treatment requests denied in reference to Ms. Aiso-la.[14] No evidence at Lfithe compensation hearing suggested that Dr. Rich lacked similar access to claimant records.
The WCJ would have heard this, as well as Dr. Rathbun’s testimony that those same medical records showed that Ms. Ai-sola suffered from a herniation with attendant axial pain. The WCJ could have imputed the same knowledge to Dr. Rich on the basis of the clinical note he received (or even the medical evidence apparently accessible to him). The WCJ was also supplied with evidence that the then-operative MTS authorized ESIs in cases of annular tests verified by imaging and associated with axial pain. See LAC 40:I:2021(H)(3)(a)(iv)(c) (2011). The WCJ was likewise presented with LAC 40:I:2021(H)(3)(a)(iv)(b), which states that “[mjulti-planar fluoroscopic imaging is required for epidural steroid injections.” Similarly, the MTS notes that the facet blocks denied by Dr. Rich are diagnostic and appropriate for “patients with pain 1) suspected to be facet in origin based on *82 exam fíndings[.]” LAC 40:I:2021(H)(3)(a)(v)(b).
Given this information, the WCJ could reasonably have concluded that the evidence available to both Dr. Rathbun and Dr. Rich demonstrated that the treatment requested by Dr. Bartholomew was reasonably necessary under the MTS such that Dr. Rich’s denial of that treatment was clearly and convincingly wrong. On this record, we do not find the judgment of the WCJ manifestly erroneous.
We affirm the judgment of the WCJ as challenged by Appellants.
117II. Ms. Aisola’s Answer to the Appeal
In her answer to the instant appeal, Ms. Aisola seeks fees on appeal and modification of the judgment in five discrete respects. Each assignment of error is addressed below.
A. Attorney fees on appeal
Ms. Aisola seeks attorney fees in connection with this appeal. ‘When the defendant in a workers’ compensation case appeals and obtains no relief, and when the appeal has necessitated additional work on the part of plaintiffs counsel, the appellate court usually awards an increase in attorney fees,” as long as the increase has been properly requested. Russell v. Orleans Parish School Bd., 05-1358, p. 9 (La.App. 4 Cir. 5/17/06), 933 So.2d 193, 200 (citing Parker v. ADM Milling Co., 01-649 (La.App. 5 Cir. 11/27/01), 804 So.2d 120); see also, McKelvey v. City of Dequincy, 07-604, pp. 11-12, (La.App. 3 Cir. 11/14/07), 970 So.2d 682, 690. In light of the extensive briefing on appeal not dupli-cative of briefing in the trial court, we award an additional $5,000.00 in attorney fees for the successful defense of the appeal.
B. The WCJ’s ruling that referrals to neurosurgeon, pain management specialist, and psychologist/psychiatrist are premature
Ms. Aisola contends that the WCJ erred in ruling that her claims related to referrals for a neurosurgeon, pain management specialist, and psychologist/psychiatrist were premature. Ms. Aisola’s request to modify the judgment in this respect lacks merit.
|1sLa. R.S. 23:1121 provides that the employee shall have the right to select one treating physician in any field or specialty. Taylor v. Hanson North America, 12-0286, p. 10 (La.App. 1 Cir. 1/9/13), 112 So.3d 272, 278, writ denied, 13-0344 (La.4/1/13), 110 So.3d 586. Where a dispute relating to a referral or choice of physician arises, an “employee shall have a right to an expedited summary proceeding pursuant to R.S. 23:1201.1(K)(8).” La. R.S. 23:1121(B)(1). Such a proceeding is initiated upon the motion of either party. La. R.S. 23:1201.1(K)(8).
Ms. Aisola has not identified any portion of the record containing a choice of physician motion that seeks to establish her right to see a pain management specialist or psychologist/psychiatrist; moreover, this Court’s review of the record finds no evidence that Ms. Aisola ever filed one. Without such a motion, the WCJ would lack authority to rule on the matter under La. R.S. 23:1121. This is in contrast to the choice of physician motion Ms. Aisola filed in the underlying proceedings in connection with her referral to Dr. Bartholomew. Because Ms. Aisola’s choice of a pain management specialist and a psychologist/psychiatrist were not properly before the WCJ, the WCJ correctly concluded that granting the requested relief would have been premature. We do not find the *83 WCJ’s ruling -with respect to this issue erroneous.[15]
This Court further notes that while Ms. Aisola did move to resolve a dispute relating to her choice of neurosurgeon, based on the judgment, it appears that the | iatrial court effectively resolved this issue when it provided that the LWCC would pay for all treatment requested by “Dr. Bradley Bartholomew, [Ms. Aisola’s] choice of neurosurgeon.” We construe this as resolving the choice of neurosurgeon dispute in Ms. Aisola’s favor.
C. The WCJ’s judgment with respect to penalties and attorney fees
Ms. Aisola seeks modification of the penalties and fees awarded to her by the WCJ. The WCJ awarded Ms. Aisola $8,000.00 in penalties and $12,000.00 in attorney fees for the LWCC’s arbitrary and capricious termination of her benefits under La. R.S. 23:1201(I).[16] However, Ms. Aisola contends that she is owed penalties and fees for the LWCC’s failure to approve referrals to a neurosurgeon, a pain management specialist, and a psychologist/psychiatrist. We agree that additional penalties and fees are due in connection with the LWCC’s refusal to authorize more than one visit to Dr. Bartholomew, but not the physicians for whom the WCJ deemed any action to be premature.[17]
We note that Ms. Aisola only seeks additional penalties and fees in connection with her choice of physician claims. “Pursuant to [La.] R.S. 23:1201 F, |20an employer or insurer may be assessed with penalties and attorney fees for failure to consent to the employee’s request to select a treating physician or change physicians when such consent is required by [La.] R.S. 23:1121.” Youngblood v. Covenant Sec. SVC, L.L.C., 11-2382, p. 12 (LaApp. 1 Cir. 12/21/12), 112 So.3d 233, 241, writ denied, 13-0200 (La.3/8/13), 109 So.3d 363. An employer’s “failure to consent to the employee’s request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty ... not [to] exceed a maximum of two thousand dollars in the aggregate for any claim.” La. R.S. 23:1201(F). Crucially, “[t]he maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars.” Id. Similarly, the penalties that may be assessed against an employer who arbitrarily and capriciously “discontinues payment of claims due and arising under this Chapter ... shall be subject to the payment of a penalty not to exceed eight thousand dollars[.]” La. R.S. 23:1201(1).
*84 We do not read La. R.S. 23:1201(1) to establish an $8,000.00 cap on all penalties awarded under Section 1201. La. R.S. 23:1201(1), for example, imposes penalties for arbitrary discontinuation of payments, whereas La. R.S. 23:1201(F) imposes penalties for the failure to consent to the selection of a treating physician. The specific wording of both provisions strongly suggests that one provision does not limit or control the other. Cf. Broussard v. Lafayette Parish Sch. Bd., 06-268, p. 12 (La.App. 3 Cir. 9/27/06), 939 So.2d 662, 671, writ denied, 06-2591 (La.1/12/07), 948 So.2d 152 (holding the cap on penalties expressed in LA. R.S. 23:1201(F) did not operate to limit penalties separately available under La. R.S. 23:1201(0). To conclude otherwise would flout the canon of construction that |21“[c]ourts should give effect to all parts of a statute and should not give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided.” Succession of Boyter, 99-761, p. 9 (La.1/7/00), 756 So.2d 1122, 1129.
Because the LWCC limited Ms. Msola to only one visit with her choice of neurosurgeon, Dr. Bartholomew, before the WCJ’s judgment, we hold that the maximum statutory penalty of $2,000.00 under La. R.S. 23:1201(F) is appropriate. We note that La. R.S. 23:1201(F) mandates “reasonable attorney fees for each disputed claim.” Therefore, some additional amount of attorney fees is due to Ms. Aisola. However, the WCJ is in the best position to determine the amount of reasonable additional fees.
Accordingly we remand this issue to the WCJ. In determining a reasonable fee due, we remind the WCJ that “La. R.S. 23:1201 F is penal in nature and, therefore, must be strictly construed” and that the “award of attorney fees in a workers’ compensation case is intended to discourage indifference and undesirable conduct by employers and insurers.” Schindler v. Orleans Reg’l Sec., 03-0522, pp. 13-14 (La. App. 4 Cir. 12/3/03), 862 So.2d 1032, 1041 (citing Williams v. Rush Masonry, Inc., 98-2271, pp. 8-9 (La.6/29/99), 737 So.2d 41, 46).
D. The WCJ’s order for Ms. Aisola to undergo an FCE
Ms. Aisola seeks modification of the judgment to the extent that it requires her to undergo an FCE. Specially, she contends that the issue was not before the WCJ. Ms. Aisola’s argument has merit.
The WCJ is “vested with original, exclusive jurisdiction over all claims or disputes arising out of Title 23 of’ the Louisiana Revised Statutes. La. R.S. 23:1310.3(F) (emphasis added). Simply put, workers’ compensation courts lack Rathe power to rule on issues not presented to it through the appropriate claims process.
Here, no procedurally valid request for an FCE was made to the WCJ. Because the FCE relates to treatment, any claim relating to an FCE would fall under the MTS. See La. R.S. 23:1203.1(1). The WCJ judgment is modified to omit the order for an FCÉ.
E. The WCJ’s order releasing the LWCC from compensating further care with Dr. Gessner
Ms. Aisola seeks modification of the judgment insofar as it releases the LWCC from any duty to authorize or compensate further treatment from her treating orthopedist, Dr. Gessner. Because the issue was not properly before the WCJ, Ms. Aisola’s claim for relief has merit.
As noted above, the compensation courts are “vested with original, exclusive jurisdiction over all claims or disputes arising” under Title 23. La. R.S. 23:1310.3(F) (emphasis added). La. R.S. 23:1310.3(A) *85 makes it plain that “[a] claim for benefits, the controversion of entitlement to benefits, or other relief under the Workers’ Compensation Act shall be initiated by the filing of the appropriate form with the office of workers’ compensation administration.” Similarly, “[t]he power and jurisdiction of the workers’ compensation judge over each case shall be continuing and he may, upon application by a party and after a contradictory hearing, make such modifications or changes with respect to former findings or orders relating thereto[.]” La. R.S. 23:1310.8(A)(1) (emphasis added). The | ^implication of these statutes is quite clear: the authority of a WCJ to resolve an issue requires that a procedurally valid claim or dispute be brought before it.
On October 11, 2012, the LWCC notified Dr. Gessner that it would no longer compensate Ms. Aisola for medical treatment provided by his office. This is clearly a choice of physician issue. However, the propriety of this action was not before the WCJ. See La. R.S. 23:1121(B)(1) (disputes relating to a choice of physician “shall have a right to an expedited summary proceeding pursuant to R.S. 23:1201.1(K)(8))”; La. R.S. 23:1201.1(K)(8) (a choice of physician proceeding is initiated by motion). Much like her failure to properly move for a pain management'specialist or psyehologist/psy-chiatrist, Ms. Aisola never procedurally moved for resolution of a choice of physician dispute with relation to Dr. Gessner. While Ms. Aisola complained of the LWCC’s withdrawal of authorization in her First Amended Petition, that alone was insufficient. A party seeking to resolve a particular choice of physician dispute must adhere to the procedures that furnish the OWC with jurisdiction to resolve the dispute. That did not happen here and so the WCJ was without authority to release the LWCC from any obligation to compensate Ms. Aisola for future treatment by Dr. Gessner. We modify the judgment to remove the WCJ’s order releasing the LWCC.
This is not to say that the LWCC must authorize treatment with Dr. Gessner going forward. If the LWCC chooses to stand on its October 11, 2012 determination to withhold further authorization, that determination may be [^challenged by Ms. Aisola in a summary proceeding pursuant to R.S. 23:1201.1(K)(8), provided Ms. Aiso-la moves the WCJ to hold such a hearing.
F. Ms. Aisola seeks to modify the judgment to require the LWCC to pay the cost of medications prescribed by Dr. Gessner
Ms. Aisola contends that the WCJ failed to award her the costs of medications prescribed by Dr. Gessner following the LWCC’s notification on October 11, 2012, that it would no longer pay for care supplied by Dr. Gessner. This claim was not properly raised.
Medication clearly falls under the board heading of “medical care, services, and treatment” due under the MTS. See La. R.S. 23:1203.1(1). Any dispute as to authorization for, or payment of, medication should have been submitted to the OWC following the procedures set forth in La. R.S. 23:1203.1(J)(1).
Here, no procedurally valid request for a payment/authorization was made to the OWC. The issue was therefore not before the WCJ. We find no error on this point and decline to modify the judgment in this respect.
CONCLUSION
Recognizing that the procedures for disputing an LWCC treatment decision are relatively new, for the forgoing reasons, we affirm in part, modify in part, and remand for further proceedings consistent with this opinion. Specifically, we affirm *86 the WCJ’s judgment with respect to its reversal of the OWC medical director. In reviewing the record, we conclude that the parties provided the WCJ with sufficient evidence for her to reasonably reverse that decision, even under the stringent clear and convincing evidence standard set forth in La. R.S. |2B23:1203.1(K). In so ruling, we do not address the correct scope of the WCJ’s review; that issue was waived. We therefore affirm the judgment on those points challenged by Appellants.
However, we do modify the judgment, in part, based on the points raised by Ms. Aisola’s answer to the appeal. While the WCJ correctly found that Ms. Aisola’s claims for authorization to see a pain management specialist and psychologist/psychiatrist were premature, the WCJ should have awarded penalties and reasonable attorney fees in regards to Ms. Aisola’s meritorious claims regarding Dr. Bartholomew. While we have already awarded appropriate penalties of $2,000.00 against the LWCC pursuant to La. R.S. 23:1201(F), we remand to the WCJ for a determination of the reasonable attorney fees due. We further modify the WCJ judgment to omit the provision ordering Ms. Aisola to undergo an FCE and releasing the LWCC from further compensating Ms. Aisola’s visits to Dr. Gessner. In all other respects, the WCJ’s judgment is affirmed. Lastly, we award Ms. Aisola an additional $5,000.00 in attorney fees for the successful defense of this appeal.
AFFIRMED IN PART; MODIFIED IN PART; AFFIRMED AS MODIFIED; REMANDED.

. The Louisiana Legislature passed La. R.S. 23:1203.1 in 2009 and the Medical Treatment Guidelines became effective on July 13, 2011. The guidelines provide a process by which a MTS is adopted to assist with the medical decision making process for injured workers. See, La. R.S. 23:1203.1(B); see also, Louisiana Workforce Commission, http://www. laworks.net/Downloads/OWC/Medical Guidelines_MedicalTreatmentGuidelineFAQs. pdf

. When she attempted to return to work several days later, a supervisor told her that she would either have to sign a waiver or obtain a release to work from a doctor. Ms. Aisola chose to see a doctor.

. Testimony at trial before the workers' compensation judge established that Dr. Rathbun works with contractor Mitchell International to provide utilization review services to the LWCC. At trial, an LWCC claims adjuster stated that denials by Mitchell International were denials by the LWCC for purposes of review.

.La. R.S. 23:1203.1(J)(1) provides:
After a medical provider has submitted to the payor the request for authorization and the information required by the Louisiana Administrative Code, Title 40, Chapter 27, the payor shall notify the medical provider of their action on the request within five business days of receipt of the request. If any dispute arises after January 1, 2011, as to whether the recommended care, services, or treatment is in accordance with the medical treatment schedule, or whether a variance from the medical treatment schedule is reasonably required as contemplated in Subsection I of this Section, any aggrieved party shall file, within fifteen calendar days, an appeal with the office of workers' compensa *75 tion administration medical director or associate medical director on a form promulgated by the director. The medical director or associate medical director shall render a decision as soon as is practicable, but in no event, not more than thirty calendar days from the date of filing.
La. R.S. 23:1203.1(J)(1) (emphasis added).

. The workers’ compensation judge found this contact was strictly prohibited and was conducted solely for the inappropriate purpose of inducing a work-capability determination from the IME.

. Ms. Aisola instituted an action before the OWC regarding the LWCC's refusal to authorize treatment by her choice of neurosurgeon, Dr. Bartholomew. She filed a claim for reinstatement of her temporary total disability benefits at the same time. This action remained pending until trial.

. In total, Dr. Gessner made five requests to perform ESIs that were denied.

. Around the time of this recommendation, on October 11, 2012, the LWCC notified Dr. Gessner that it would no longer authorize or cover treatment that he provided to Ms. Aiso-la.

. Appellee submits that the only ESI request denial appealed from was made by Dr. Bartholomew, rather than Dr. Gessner.

. Pursuant to La. R.S. 23:1203.1(J) and (K), after a healthcare provider’s request for purportedly non-scheduled treatment is denied, the provider may file an appeal to the Medical Director on Form 1009, and any parly who disagrees with the decision of the Medical Director can file a disputed claim on Form 1008 with the OWC.

. Maximum medical improvement.

. The WCJ apparently disregarded the IME's addendum to his report as the product of illegal and inappropriate contact with Ms. Aisola’s LWCC claims adjuster, who attempted to “squeeze out of” the IME an opinion on whether Ms. Aisola could return to sedentary or light work duty. Appellants did not challenge these findings on appeal and we find them reasonable on the record.

. It is well settled law that the trial court's oral or written reasons form no part of the judgment. State v. Williams, 11-0958, p. 9 (La.7/2/12), 94 So.3d 770, 776 (citing Burmaster v. Plaquemines Parish Government, 07-1311, pp. 1-2 (La.8/31/07), 963 So.2d 378, 379 (per curiam)). Nevertheless, "it is not improper for an appellate court to consider the reasons for judgment in determining whether the trial court committed a legal error.” Winfield v. Dih, 01-1357, p. 9 (La. App. 4 Cir. 4/24/02), 816 So.2d 942, 948 (citing Donaldson v. Universal Eng’g of Maplewood, Inc., 606 So.2d 980, 988 (La.App. 3rd Cir.1992)).

. No evidence at trial suggested that Dr. Rich's review was limited to what he had received on appeal from Dr. Bartholomew. Moreover, Dr. Rathbun’s comments on the other requests within Ms. Aisola's file would reasonably lead the reader to believe that the information was easily accessible by OWC and LWCC personnel.

. This Court notes that Ms. Aisola should have little trouble obtaining the appropriate authorization for these physicians in the future in light of the WCJ’s rulings with regard to her medical treatment.

. La. R.S. 23:1201(1) states in full:
Any employer or insurer who at any time discontinues payment of claims due. and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims. The provisions as set forth in R.S. 23:1141 limiting the amount of attorney fees shall not apply to cases where the employer or insurer is found liable for attorney fees under this Section. The provisions as set forth in R.S. 22:1892(C) shall be applicable to claims arising under this Chapter.

.Since we previously determined that the WCJ did not err in finding that Ms. Aisola’s claims for choice of a pain management specialist and a psychologist/psychiatrist were premature, we do not believe that the Ms. Aisola is entitled to penalties or fees for the LWCC’s refusal to authorize referrals to such specialists.